309 So.2d 520 (1975)
C.E. JACKSON, Jr., et al.
v.
Eddie W. SMITH and the City of McComb, Mississippi.
No. 47939.
Supreme Court of Mississippi.
March 17, 1975.
*521 Joe N. Pigott, McComb, for appellants.
Robert W. Brumfield, McComb, for appellees.
Before GILLESPIE, INZER and BROOM, JJ.
INZER, Justice:
Appellants-plaintiffs, Mr. and Mrs. C.E. Jackson, Jr. and their five minor children, brought suit in the Circuit Court of Pike County against Eddie W. Smith and the City of McComb seeking to recover damages for the death of Bruce Jackson, the seven year old son and brother of appellants who died as a result of a collision between an automobile driven by Eddie Smith and a bicycle upon which deceased was riding. A trial was had and at the conclusion of plaintiffs' case the court granted a peremptory instruction in favor of the City of McComb, and the jury returned a verdict in favor of the defendant Eddie W. Smith. A judgment was entered dismissing the suit with prejudice, hence this appeal. We affirm.
Since the jury resolved that conflicts in the testimony in favor of the defendant, the facts will be stated in the light most favorable to him. Eddie W. Smith, on June 23, 1971, was and had been for many years a policeman in the City of McComb, attaining the rank of Captain. The city assigned him a 1971 Chevrolet which was his duty to see that the car was properly maintained. The engine of the car was malfunctioning and on the morning of June 23, 1971, Smith drove the car to Davis Motor Company and picked up Fleet O'Quinn, a mechanic, to have him determine what was wrong with the car. Smith drove the car up Interstate 55 and on the way back to the city, Smith received a message that there had been an accident on Highway 51. Smith checked out the accident and was on his way to carry O'Quinn back to his place of business. Smith was driving east on Park Drive approaching the point where Wilson Street makes a T-intersection from the south with Park Drive. There is an embankment on the west side of Wilson Street where it intersects with Park Drive, which to some extent obscures the vision of persons going east on Park Drive. This is caused by the fact that Wilson Street slopes downward to intersect with Park Drive. There is a stop sign facing traffic entering Park Drive from Wilson Street. There is an overhead school zone sign across the intersection facing eastbound traffic on Park Drive. When school is in session this sign has blinking lights, but when school is not in session the lights are turned off and the area is not then considered a school zone. The lights had been turned off for the summer prior to the date of the accident. The speed limit in McComb is 30 miles per hour, except in school zones where it is 15 miles per hour. The car that Smith was driving was relatively new and had good tires. The weather was clear and the asphalt pavement was dry. As Smith approached the intersection he was driving at a speed of 25 to 30 miles per hour. At the same time Mrs. Philley was approaching the intersection from the east. When *522 Smith was within about eight to ten feet of the intersection, he caught a glimpse of a small boy coming down the hill on a bicycle entering Wilson Street. Smith immediately swerved his vehicle to the left and put on his brakes in an attempt to avoid the collision, but he was unable to do so, and the boy on the bicycle struck the car just behind the right front bumper. Apparently, the force of the collision threw the child against the windshield of the car and he was carried about 80 feet before he fell to the pavement. The police car came to rest about 117 feet east of the point of impact.
Mrs. Philley testified as she approached the intersection meeting the police car, she had a better view of Wilson Street and she saw a small boy on a small bicycle pedalling fast coming down the hill on Wilson Street on the west side approaching the intersection. She was driving between 30 and 40 miles per hour and as soon as she saw the boy on the bicycle, and realized that he was not going to stop before entering the intersection, she stomped her brakes, gripped the steering wheel, and headed to the right. She said that she realized that everything was so close that there was going to be a collision, because Smith had swerved his car to the left into her lane of traffic. She said everything happened instantaneously, "just like in a second." When her car came to rest she was completely off the pavement on the north side of Park Drive. On cross examination she stated that the police car turned into her lane of traffic and she presumed he applied his brakes. She did not know what kept him from hitting her car.
O'Quinn corroborated the testimony of Smith as to the speed and how the accident happened. These three people were the only three living eye-witnesses to the accident.
Immediately after the accident Smith radioed for an ambulance and went back to where the boy was lying on the pavement. The boy was unconscious and in just a few minutes the ambulance came and carried the boy to the hospital. Smith followed the boy to the hospital where he learned that the child was Bruce Jackson. The child died two days later as a result of the accident.
Appellants argue several propositions for the reversal of this case, but we will only address ourselves to those propositions which in our opinion merit discussion.
It is first contended that the trial court was in error in sustaining the defendant's motion to strike paragraph 5 of the declaration. This paragraph charged that the point where the accident happened was a school zone and it was known to Smith and the general public as a place where children crossed Park Drive to go to and from school and a public playground. The court heard testimony on the motion to strike the paragraph and determined that the intersection was not a school zone at the time of the accident. An order was entered sustaining the motion to strike this paragraph.
Appellants however admit that the allegations made and contained in this paragraph were testified to at the trial without objection on the part of the defendant. The issue of whether this was a school zone at the time of the accident was submitted to the jury under proper instructions and it is apparent that the jury determined from the evidence that it was not a school zone at the time of the accident. We are of the opinion, that at the most, it was a jury issue as to whether this intersection was a school zone at the time of the accident. Under these circumstances we are unable to see how the appellants were in any way prejudiced by the action of the trial court and any error in this regard is harmless. Miss.Sup.Ct. Rule 11 (1967).
We find no merit in appellants' contention that the trial court was in error in granting the directed verdict in favor of the City of McComb on the ground that *523 the doctrine of municipal immunity applied. It has long been the rule in this state that the establishment of and maintenance of the police department is a governmental function. City of Hattiesburg v. Geigor, 118 Miss. 676, 79 So. 846 (1918). We find no merit in appellants' contention that the fact that it was part of Smith's duty to see that the police car assigned to him was properly maintained brings this case within the "scrambled duties doctrine" recognized in City of Meridian v. Beeman, 175 Miss. 527, 166 So. 757 (1936). There was no proof that Officer Smith was required to perform other duties not connected with the police department. His duty to see that the police car he used in connection with his police duties was properly maintained was nothing more or less than a part of the activities of the police department in its law enforcement activity.
Appellants make a somewhat persuasive argument that we should now overrule our former cases and now reject the doctrine of municipal immunity as archaic and unjust. We are aware that a number of jurisdictions have abolished it by an act of the legislature and other by judicial decision. We have heretofore considered this matter and stated that any rejection of the doctrine should be left to the legislature. After due consideration, we find no compelling reason at this time to abolish the doctrine of governmental immunity by judicial decision. Anderson v. Vanderslice, 240 Miss. 55, 126 So.2d 522 (1961); Twiner v. Jenkins, 257 So.2d 488 (Miss. 1972).
Appellants assign as error the action of the trial court in sustaining the objection to a hypothetical question propounded to the expert witness Edward Springer. Appellants were attempting to show the speed of the police car by the length of the skid marks laid down after Officer Smith applied his brakes. In the first place the question whether this type of testimony is admissible in a given case is largely in the discretion of the trial court. Saucier v. Talkington, 251 Miss. 519, 170 So.2d 434 (1965). The trial court sustained the objection to the question on the ground that there was no definite proof in the record at that stage of the proceedings to show the length of the skid marks. From a reading of the record we cannot say that the trial court was wrong in so holding. In any event appellants failed to make up the record to show what the answer of this witness would have been had he been allowed to answer the question. Martin v. Gill, 182 Miss. 810, 181 So. 849 (1938). Then, too, the witness Jackson using the chart prepared by Springer was allowed to testify over objection that the Springer chart indicated a speed of 48.5 miles per hour. We are not called upon to determine whether this testimony was admissible, but in any event, the jury had before it, not only this testimony, but also the testimony relative to the length of the skid marks, the speed of the police car some 200 yards before the collision and the testimony of Smith and O'Quinn as to the speed just prior to the collision. It was from this conflicting testimony that the jury determined that Smith was not speeding or driving at a rate of speed that was not reasonable and proper under the circumstances.
Although this was a tragic and regrettable accident in which a seven year old boy lost his life, after a careful consideration and review of the record in this case, we find that the jury resolved the issues under proper instructions and we cannot say that its verdict was against the overwhelming weight of the evidence. It follows that this case must be affirmed.
Affirmed.
RODGERS, P.J., and PATTERSON, SMITH, ROBERTSON, SUGG and WALKER, JJ., concur.