# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 95-CA-00672-SCT

*DAPHNE MOSBY, INDIVIDUALLY AND ON BEHALF*
*OF LATASHA MOSBY, HER MINOR CHILD*

*v.*

*OFFICERS ANDREW MOORE, THOMAS THORNTON*
*AND THE CITY OF OXFORD, A MUNICIPAL*
*CORPORATION, ACTING BY AND THROUGH ITS*
*POLICE DEPARTMENT*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/16/95 |
| TRIAL JUDGE: | HON. R. KENNETH COLEMAN |
| COURT FROM WHICH APPEALED: | LAFAYETTE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | SUZANNE KEYS |
| ATTORNEY FOR APPELLEES: | THOMAS T. DUNBAR |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND REMANDED - 6/4/98 |

## CONSOLIDATED WITH

## 95-CA-01363-SCT

*DAPHNE MOSBY, INDIVIDUALLY AND ON BEHALF*
*OF LATASHA MOSBY, A MINOR*

*v.*

*OFFICERS ANDREW MOORE AND THOMAS*
*THORNTON, INDIVIDUALLY AND IN THEIR*
*OFFICIAL CAPACITIES*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/14/96 |
| TRIAL JUDGE: | HON. R. KENNETH COLEMAN |
| COURT FROM WHICH APPEALED: | LAFAYETTE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | SUZANNE KEYS |
| ATTORNEY FOR APPELLEES: | THOMAS T. DUNBAR |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND REMANDED - 6/4/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 6/25/98 |

**EN BANC.**

**PITTMAN, PRESIDING JUSTICE, FOR THE COURT:**

¶1. The plaintiff, Daphne Mosby, filed suit on April 7, 1994, on behalf of herself and her daughter, Latasha Mosby, against the defendants, Herbert Jeffries, the City of Oxford, and Officers Andrew Moore and John Doe. The suit was filed as a result of an automobile accident in which the defendant, Herbert Jeffries, rear-ended the plaintiffs' car while being pursued by the Oxford police. The accident occurred on December 24, 1992.

¶2. Defendants filed a motion for summary judgment on the basis that the suit was barred by the doctrine of sovereign immunity as to the City, and also as to the police officers because the officers were sued only in their official capacities. The trial court granted summary judgment for the defendants on June 16, 1995, holding that the officers had not been sued individually and that the defendants were protected by sovereign immunity. Mosby moved the court to voluntarily dismiss Jeffries from the suit without prejudice. Mosby is appealing the June 16, 1995, decision and that appeal is Cause No. 95-CA-00672-SCT.

¶3. Thereafter, she filed a second complaint against the police officers in their individual capacities on July 26, 1995. In the second suit, Thomas Thornton replaced the previously named John Doe as a defendant. Defendants moved for dismissal, or in the alternative, summary judgment on the basis that the plaintiff's claims were barred by sovereign immunity, res judicata, laches, and the statute of limitations. Alternatively, their basis for the motion was that the officers were entitled to qualified immunity on the plaintiff's claims. On December 8, 1995, the trial court granted summary judgment for the defendants holding that the officers were engaged in discretionary duties on the night of the accident, and that they were entitled to qualified immunity.

¶4. Mosby is also appealing that decision in Cause No. 95-CA-01363-SCT . The two cases have been consolidated on appeal. Mosby appeals to this Court from the lower court's grant of summary judgment in both cases and raises the following issues:

> **I. THE CITY OF OXFORD WAS NOT PROTECTED BY SOVEREIGN IMMUNITY IN DECEMBER 1992.**
>
> **II. THE OFFICERS WERE NOT IMMUNE FROM SUIT IN DECEMBER 1992.**
>
> **III. BECAUSE THERE EXIST FACTUAL DISPUTES OF A MATERIAL NATURE, THIS CAUSE MAY NOT BE RESOLVED VIA SUMMARY JUDGMENT.**

**STATEMENT OF FACTS**

¶5. On the night of December 24, 1992, Paul Hipp had stopped at an Exxon Service Station on the corner of University Avenue and South Lamar Boulevard in Oxford, Mississippi. As Hipp was getting out of his vehicle, Herbert Jeffries backed into Hipp's car. After hitting the car, Jeffries pulled

forward and attempted to leave. Hipp ran to the passenger side of Jeffries' car and jumped in, in an attempt to stop Jeffries from leaving. Jeffries cut his wheel sharply, and Hipp claims that he was slung from the car. He managed to grab onto the door to keep his balance. Jeffries then left the Exxon Station, traveling north on Lamar where he passed an Oxford police officer on patrol. Hipp had run out into the street after Jeffries. He flagged down the police officer who was Officer Andrew Moore. He told Officer Moore what had happened, and Officer Moore asked if the person who damaged Hipp's car was in the car he had just seen on Lamar. Hipp said yes, and Officer Moore began to search for Jeffries.

¶6. Officer Moore first spotted Jeffries turning west onto Adams Street. He followed him to the intersection of North 11th and Jefferson where he caught up with Jeffries. At that point, Officer Moore initiated his blue lights in an attempt to stop Jeffries. Jeffries increased his speed pulling away from Officer Moore, and turned left onto North 9th Street.

¶7. Officer Moore was in radio contact with Officer Alan Ivy who said that he was at the top of the hill on North 9th, and that he was going to attempt to set up a roadblock with his car. He did so, but Jeffries was able to get around the roadblock by running up on the curb. Jeffries proceeded right onto West Jackson Avenue. Officers Moore and Ivy then turned on their sirens and followed Jeffries. Officer Moore stated in his deposition that his speed reached between 70 and 80 m.p.h. on the 30 m.p.h. road. Officer Moore saw Jeffries pass three cars and run two stoplights.

¶8. Officer Moore claims that he began to experience mechanical problems with his car and that he was unable to keep up with Jeffries. Mosby contests this assertion because there is no mention of it in the officers' report and no record of the car having been serviced soon after the 24th. Officer Moore contends that he lost sight of Jeffries for a moment, and that the next thing he saw were the tail lights of Jeffries' car running off the road and smoke from the accident. Officer Moore estimates that he was 1/8 mile behind Jeffries when the accident occurred.

¶9. Officer Thomas Thornton, Officers Moore and Ivy's shift supervisor, heard the radio communications concerning the pursuit. He sat in his parents' driveway and listened but did not communicate with Officers Moore and Ivy.

¶10. The car hit by Jeffries was driven by Camilla Pegues, Daphne Mosby's sister. Latasha Mosby, Daphne's daughter, was also in the car. Latasha received a cut lip in the accident. Daphne received serious injury leaving her paralyzed from the waist down.

¶11. Jeffries admitted that he had been drinking the night of the accident and also admitted to smoking marijuana which he thought must have been laced with cocaine. Jeffries pled guilty to D.U.I. and aggravated assault and is currently serving a twelve-year sentence in the State Penitentiary.

## LAW

### I. THE CITY OF OXFORD WAS NOT PROTECTED BY SOVEREIGN IMMUNITY IN DECEMBER, 1992.

### A. Sovereignty of the City

¶12. The accident between Mosby and Jeffries occurred on December 24, 1992. In his order granting

summary judgment to the City and to the police officers in the first case, the trial judge stated:

> Upon re-hearing of the motion of the Defendant City of Oxford, et al., the Court holds that the allegations involving the Defendants (on December 24, 1992) were of a governmental nature and thus the City of Oxford is entitled to sovereign immunity under the laws of the 1992 Extraordinary Session, Ch. 3 §§ 1 and 2 (effective September 16, 1992). The individual police officers were not sued individually and therefore the suit is against the entity only. *Haffer v. Mello,* 112 S.Ct. 358, 361 n.1 (1991).
>
> The Court finds that under MCA § 11-46-3 participation in the Mississippi Municipal Liability Plan does not waive sovereign immunity under said statute. *Morgan v. City of Ruleville,* 627 So.2d 275, 279 (Miss. 1993). Therefore, the Defendants are entitled to a dismissal with prejudice.
>
> WHEREFORE, PREMISES CONSIDERED, the Court holds that the City of Oxford is entitled to sovereign immunity for the actions of the police officers and this cause is dismissed with prejudice.

¶13. The claims against the City of Oxford made by Mosby are barred, as the judge ruled, by the special legislation passed by the Mississippi Legislature in September of 1992. During that special session, the Legislature repealed Miss. Code Ann. § 11-46-6 (Laws of the 1992 Extraordinary Session, Ch. 3 § 2, September 1992), which this Court had held unconstitutional in *Presley v. Mississippi State Highway Commission,* 608 So. 2d 1288 (Miss. 1992). It also amended Miss. Code Ann. § 11-46-3 to provide:

> (1) The Legislature of the State of Mississippi finds and determines as a matter of public policy and does hereby declare that, except as provided in subsection (2) of this section, from and after the passage of House Bill No.2, 1992 First Extraordinary Session, the "state" and its "political subdivisions," as such terms are defined in Section 11-46-1, shall not be liable and shall be immune from suit at law or in equity on account of any wrongful or tortious act or omission, including but not limited to libel, slander or defamation, by the state or its political subdivisions, or any such act or omission by any employee of the state or its political subdivisions, notwithstanding that any such act or omission constitutes or may be considered as the exercise or failure to exercise any duty, obligation, or function of a governmental, proprietary, discretionary, or ministerial nature and notwithstanding that such act or omission may or may not arise out of any activity, transaction or service for which any fee, charge, cost or other consideration was received or expected to be received in exchange therefor.
>
> (2) The immunity granted under subsection (1) of this section shall not be applicable to an incorporated municipality for any wrongful or tortious act or omission by such municipality or any employee of such municipality that arises out of the exercise or failure to exercise any duty, obligation or function of a proprietary nature.

Laws of the 1992 Extraordinary Session, ch.3 § 1 (September 1992).

¶14. The City of Oxford argues and we find that under Subsection (2) of Section 1 of Chapter 3, codified as Miss. Code Ann. § 11-46-3 (Supp. 1992), only acts of an incorporated municipality which

are proprietary in nature are excepted from sovereign immunity. In ***Jackson v. Smith,*** 309 So. 2d 520 (Miss. 1975), this Court said, "[i]t has long been the rule in this state that the establishment of and maintenance of the police department is a governmental function." ***Id.*** at 523 (citing ***City of Hattiesburg v. Geigor,*** 118 Miss. 676, 79 So. 846 (1918)); *See also*, ***Anderson v. Jackson Municipal Airport Authority,*** 419 So. 2d 1010, 1014 n.1 (Miss. 1982) ("The following are 'governmental' functions: . . establishment and regulation of schools, hospitals, poorhouses, fire departments, police departments, jails, workhouses, and police stations...") (citing ***Jackson v. Smith,*** 309 So. 2d 520 (Miss. 1975) (police department)). Based on the case law and the statute, the City asserts that the maintenance of its police department was a governmental function, and therefore protected by sovereign immunity.

¶15. It is clear from a reading of Miss. Code Ann. § 11-46-3 as amended and enacted during the Extraordinary Session, that Mosby's claim was governed by the statute. That statute took effect on September 16, 1992, three months before the accident. The Legislature intended to grant sovereign immunity to the state and its political subdivisions with the exception of municipalities engaged in proprietary functions. It did so in a special session in order that it would take effect immediately and in order to give themselves time to draft the Mississippi Tort Claims Act which became effective on April 1, 1993.

¶16. The City of Oxford was protected by sovereign immunity due to the Extraordinary Session legislation of September 1992. Furthermore, the establishment and maintenance of a police department is a governmental function and not a proprietary function. The City of Oxford was entitled to the protection of sovereign immunity in December 1992, and the trial court did not err in granting summary judgment to the City.

## B. Equal Protection

¶17. The plaintiff Mosby attacks the constitutionality of the statute allowing municipalities to purchase liability insurance and thereby waive immunity up to that amount. This law was codified in Miss. Code Ann. § 21-15-6 (1990). The City of Oxford did participate in the Mississippi Municipal Liability Plan, and the lower court held that that participation did not waive sovereign immunity, according to ***Morgan v. City of Ruleville,*** 627 So. 2d 275, 280-81 (Miss. 1993). In that case, this Court said that the Mississippi Municipal Liability Plan does not fit within the definition of insurance under Miss. Code Ann. § 83-5-5 (1991), which is general liability insurance sufficient to waive sovereign immunity pursuant to Miss. Code Ann. § 21-15-6 (1990), but is instead self insurance or self protection insufficient to waive sovereign immunity. ***Id.***

¶18. Mosby argues first, that the statute violates equal protection because there was no mandatory requirement that all political subdivisions purchase liability insurance. Mosby asserts that this statute violates equal protection because there is no rational reason for the Legislature to distinguish between citizens of one political subdivision and those of another.

¶19. "A state may confer benefits on some and not others under equal protection, 'so long as its decision is rational.'" ***Westbrook v. City of Jackson,*** 665 So. 2d 833, 838 (Miss. 1995) (quoting ***Doe v. Gaughan,*** 808 F.2d 871, 883 (1st Cir. 1986)). "In apportioning limited resources, governments 'need not provide the same level of benefits to all recipients.'" ***Id.*** (quoting ***Baker v. City of Concord,*** 916 F.2d 744, 748 (1st Cir. 1990)).

¶20. The Mississippi Municipal Liability Plan is a program of self protection for municipalities in the state of Mississippi, set up to minimize exposure and risk to the municipality. All funds contributed to the Plan are public funds from municipalities of the state. The purpose of contributing funds is to maintain a reserve fund or a savings fund for the payment of claims which are not insured and which are not covered by sovereign immunity.

¶21. Mosby did not allege in either her argument to the lower court or in her brief to this Court that the statute is not rationally related to a legitimate governmental purpose. This Court has held that protecting the public treasury is a legitimate legislative purpose. *Wells v. Panola County Bd. of Educ.,* 645 So. 2d 883, 897 (Miss. 1994). We therefore find that the statute in question is rationally related to that legitimate purpose. Mosby has not shown otherwise. Because the statute is rationally related to a legitimate purpose, equal protection is not violated by conferring benefits on some and not all of the people of the state.

## II. THE OFFICERS WERE NOT IMMUNE FROM SUIT IN DECEMBER 1992.

¶22. Mosby contends that the police officers in this case were not immune from suit in December 1992. In Mosby's first suit, the trial court granted summary judgment to the defendants because it found that the police officers had not been sued in their individual capacities. Because the lower court found that the officers had only been sued officially, it reasoned that the first suit was in effect only a suit against the City of Oxford. It ruled that the City of Oxford was entitled to the protection of sovereign immunity, and therefore granted summary judgment to the City and its officers.

¶23. In the second suit, Mosby sued the officers in their official as well as their individual capacities. The Court found in that suit that the suit against the officers in their official capacities was barred by the doctrine of *res judicata* because it had found that the City was protected by sovereign immunity in the first suit. It also ruled that the officers were entitled to the protection of qualified immunity in their individual capacities because they were involved in discretionary duties at the time of the accident.

### A. Suit #1 - NO. 95-CA-00672-SCT

¶24. This suit against the City of Oxford ended in a summary judgment against the plaintiff Mosby. The trial court found that the officers had been sued only in their official capacities and the lower court found that the City of Oxford was entitled to sovereign immunity. It therefore granted summary judgment to the City and to the officers. The trial court found that a suit against the officers in their official capacities was nothing more than a suit against the City.

¶25. In *Daniels v. Sones,* 245 Miss. 461, 147 So. 2d 626 (1962), this Court held that a suit against members of the Board of Supervisors was against the members individually where the specific charges in the complaint implied a suit against the members in their individual capacities. *Id.* at 472, 147 So. 2d at 629..

¶26. The fact that the plaintiff sought punitive damages in the first suit implies that the officers were sued individually because a municipality cannot be sued for punitives. In *Gregory v. Chehi,* 843 F.2d 111, 119-20 (3rd Cir. 1988), the Court said:

> It is clear, however, that the individual defendants are not sued solely in their official capacities in the federal action. Plaintiff seeks from each of them punitive, as well as compensatory damages. Punitive damages cannot be recovered from defendants in their official capacities. Thus, resolving doubts in favor of plaintiff, we will assume he is suing the individuals in their personal capacities as well.

*Id.*; *See also* ***Shabazz v. Coughlin,*** 852 F.2d 697, 700 (2nd Cir. 1988) (request for punitive damages indicates personal nature of lawsuit). Further, where a qualified immunity defense is offered, this may indicate a suit against an officer in his individual capacity.

¶27. In ***Kentucky v. Graham,*** 473 U.S. 159 (1985), the Supreme Court observed that when a complaint does not clearly specify whether state officials are being sued in their individual or official capacities, the course of proceedings will often indicate the nature of the liability sought by the plaintiff. *See also* ***Fitzgerald v. McDaniel,*** 833 F.2d 1516, 1520 (11th Cir. 1987) (because defendants raised and litigated a defense of qualified immunity, the lawsuit was filed against them in their individual capacities); and ***Conner v. Reinhard,*** 847 F.2d 384, 394 n.8 (7th Cir. 1988) (defense of qualified immunity indicates action brought against defendants in individual capacity).

¶28. Based on this Court's decision in ***Daniels,*** *supra*, and on a review of Federal cases on point, we think it appropriate and judicially efficient to take the less stringent approach. ***Gregory v. Chehi,*** *supra;* ***Kentucky v. Graham,*** *supra;* ***Fitzgerald v. McDaniel ,*** *supra.* We find that based on the allegations raised in Mosby's complaint, the fact that she sought punitive damages against the officers, and that the officers raised the affirmative defense of qualified immunity, that Mosby did sue the police officers in their individual capacities. Therefore, the trial court erred in finding that Mosby had only sued the officers in their official capacities. As a result, the trial court erred in granting summary judgment to the officers on the basis of sovereign immunity. We find reversible error in the first suit and the second suit and we find that in both causes the plaintiff sued the officers in their individual capacities.

## B. Suit #2 - 95-CA-01363-SCT

¶29. In her second suit stemming from this accident, Mosby sued Officers Andrew Moore and Thomas Thornton in their official and individual capacities. The trial judge again granted summary judgment to the defendants. He ruled that the officers, in their official capacities, were immune from suit under sovereign immunity, and also that suit was barred by res judicata. He also ruled that the officers were entitled to qualified immunity in their individual capacities.

## 1. Official Capacity

¶30. We find that the trial court did not err in granting summary judgment to the defendant officers in their official capacities in the second suit. A suit against a public official in his official capacity is nothing more than a suit against the entity. ***Hafer v. Melo,*** 502 U.S. 21, 25 (1991). Therefore, because the City of Oxford was entitled to the protection of sovereign immunity, summary judgment was proper as to the City and to the officers. Additionally, Mosby was barred by the doctrine of *res judicata* from suing the officers in the second suit in their official capacities, as they had already been sued in that capacity in the first suit.

## 2. Individual Capacity

¶31. When officers or agents of the State of Mississippi are sued in a civil action, they enjoy qualified public official immunity. This Court has said that an official has

> no immunity to a civil action for damages if his breach of a legal duty causes injury and (1) that duty is ministerial in nature, or (2) that duty involves the use of discretion and the governmental actor greatly or substantially exceeds his authority and in the course thereof causes harm, or (3) the governmental actor commits an intentional tort. Beyond that, a government official has no immunity when sued upon a tort that has nothing to do with his official position or decision-making function and has been committed outside the course and scope of his office.

*Barrett v. Miller,* 599 So. 2d 559, 567 (Miss. 1992)(quoting *McFadden v. State,* 542 So. 2d 871, 877 (Miss. 1989)).

¶32. In the second suit, Mosby sued the officers in their individual capacities. She first argues that the officers were not protected by qualified immunity because they were performing ministerial duties. This Court in *Barrett,* distinguished between ministerial and discretionary duties. We said:

> While there is no flexible rule to distinguish whether an act is ministerial or discretionary, the most important criteria is if the duty is one which has been positively imposed by law and in a manner or upon conditions which are specifically designated, the duty to perform under the condition specified, not being dependent upon the officer's judgment or discretion, the act and discharge thereof is ministerial.

*Id.*

¶33. Mosby argues that the officers in this case were simply following the established pursuit policy of the City of Oxford, and that therefore their duty was ministerial. She argues that this case is similar to the situation in *Davis v. Little,* 362 So. 2d 642, 644 (Miss. 1978), where this Court held that a county supervisor, while driving a county truck on county business which struck the plaintiff, was not entitled to qualified immunity because the act of driving in a reasonable manner did not involve a discretionary decision-making process. *Id.* The case *sub judice* is obviously a different situation than that in *Davis.* The act of driving for police officers is a major part of their jobs. It is something that they must do in order to fulfill their duties. They do not drive simply to get from one place to another, instead they patrol. This type of driving does involve a discretionary, decision-making process and is distinguished by facts and job and duty requirement from *Davis*.

¶34. Furthermore, the pursuit policy under which these officers were operating did not specifically delineate how they should drive, but left much to the officers' discretion. Specifically, the act of continuing pursuit was dependent on the officer's judgment as the policy directs that he must continually question whether he should continue the pursuit. In fact, Mosby's own expert stated in his deposition that the officers had total discretion under the pursuit policy. We find that the officers in this case were operating under a discretionary, not ministerial duty at the time of the accident.

### III. BECAUSE THERE EXIST FACTUAL DISPUTES OF A MATERIAL NATURE, THIS CAUSE MAY NOT BE RESOLVED VIA SUMMARY JUDGMENT.

¶35. This Court employs a de novo review on grants of summary judgment. *Owen v. Pringle,* 621 So. 2d 668, 670 (Miss. 1993). A trial court may grant summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56(c). "A fact is material is it 'tends to resolve any of the issues, properly raised by the parties.'" *Webb v. Jackson,* 583 So. 2d 946, 949 (Miss. 1991) (quoting *Mink v. Andrew Jackson Cas. Ins. Co.,* 537 So. 2d 431, 433 (Miss. 1988) (quoting *Mississippi Rd. Supply Co. Inc. v. Zurich-American Ins. Co.,* 501 So. 2d 412, 414 (Miss. 1987))). The evidence must be viewed in the light most favorable to the non-moving party. If, in this view, the moving party is entitled to a judgment as a matter of law, then summary judgment should be granted. Otherwise, the motion should be denied. *Brown v. Credit Ctr., Inc.,* 444 So. 2d 358, 362 (Miss. 1983).

¶36. The City of Oxford was granted summary judgment in the first suit on the basis of sovereign immunity, and we find that summary judgment was appropriate. However, the trial court erred in the first suit in finding that the officers were sued in their official capacities only. We find that the officers were sued in their individual capacities as well. The officers, in their official capacities, were granted summary judgment in both suits, and this was also appropriate because a suit against them was nothing more than a suit against the City of Oxford. Finally, the officers were granted summary judgment in their individual capacities in the second suit. The grant of summary judgment was not appropriate because the officers are not entitled to the protection of qualified immunity if they substantially exceeded their authority in the performance of their discretionary duties. *Barrett,* 599 So. 2d at 567. There are disputed facts as to this question. Therefore, summary judgment was not proper as to the officers in their individual capacities. Cause No. 95-CA- 01363-SCT is reversed and remanded for a trial on the merits.

¶37. **REVERSED AND REMANDED AS TO BOTH CAUSES FOR PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION.**

**PRATHER, C.J., SULLIVAN, P.J., AND WALLER, J., CONCUR. MILLS, J., DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY ROBERTS AND SMITH, JJ. BANKS, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY McRAE, J. McRAE, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION.**

**MILLS, JUSTICE, DISSENTING IN PART:**

¶38. I agree that in both suits the officers were sued in their official capacities, and therefore they should be granted the protection of sovereign immunity. However, I dissent from the majority's view that the officers were sued in their personal capacities in the first suit. The burden is on the plaintiff to plead that he is personally bringing suit against a state official. If the plaintiff fails to do so, the presumption must be that suit is being brought against the defendant in his official capacity. Otherwise, a chilling effect will result that discourages our peace officers from zealously performing their duties. "It is not too much to ask that if a person or entity is to be subject to suit, the person or

entity should be properly named and clearly notified of the potential for payment of damages individually." ***Wells v. Brown***, 891 F.2d 591, 592 (6th Cir. 1989) (*citing* ***Brandon v. Holt***, 469 U.S. 464, 474 (1985)).

¶39. The majority cites ***Daniels v. Sones***, 245 Miss. 461, 147 So.2d 626 (1962) for the proposition that the allegations in the first suit should be viewed as a personal suit against the officers. I believe that ***Daniels*** should not be extended beyond the realm of alleged fraudulent wrongdoing. The bill in ***Daniels*** alleged that the Board of Supervisors adopted an order to sell county and municipal bonds to the highest and best bidder, but in the very same order sold the bonds for $32,000 below market value. The bill alleged there was no public advertisement of the sale. This sequence of events created a serious air of impropriety that lead the plaintiffs to allege that the Board of Supervisors had intentionally violated its fiduciary duty in the handling of school funds, and thus committed a legal fraud. The Court held that these allegations were sufficient to state a "good cause of action against the individual members of the Board of Supervisors...." ***Id. at*** 472, 147 So.2d at 629.

¶40. The complaint in the case *sub judice* alleges only negligent action on behalf of the police officers. It does not suggest that the officers intentionally caused the accident. Thus, ***Daniels*** is inapplicable to the facts of this case.

¶41. The majority also bases much of its argument upon ***Kentucky v. Graham****,* 473 U.S. 159 (1985). In ***Graham***, the Supreme Court did observe that when a complaint does not state whether state officials are being sued in their individual or official capacities, the course of proceedings will often indicate the nature of the liability sought by the plaintiff. The majority then uses this premise, along with the fact that the plaintiffs sought punitive damages, and the officers' qualified immunity affirmative defense to find that Mosby sued the police officers in their individual capacities. The majority's argument is fatally flawed. ***Graham,*** and all of the other cases that the majority cites as authority, were brought in federal court. Thus, the liberal federal pleading requirements govern those cases, not Mississippi pleading requirements.

¶42. Rule 9(a) of the Federal Rules of Civil Procedure provides in pertinent part,

"(a) Capacity. It is not necessary to aver the capacity of the party to sue or be sued...".

¶43. Under this liberal federal rule, federal courts split as to whether capacity must be alleged in the initial complaint. Both the Sixth and Eighth Circuits require plaintiffs to specifically plead the capacity in which they are bringing suit against state officials. *See* ***Nix v. Norman***, 879 F.2d 429, 431 (8th Cir. 1989); ***Wells v. Brown,*** 891 F.2d 591, 592 (6th Cir. 1989). Furthermore, the United States Supreme Court has noted that under the federal pleading requirements "'[i]t is obviously preferable for the plaintiff to be specific in the first instance to avoid any ambiguity.'" ***Hafer v. Melo***, 502 U.S. 21, 24, n. 1 (1991) (citation omitted).

¶44. Rule 9(a) of the Mississippi Rules of Civil Procedure reads much differently than its federal counterpart. It provides:

(a) Capacity. The capacity in which one sues or is sued ***must*** be stated in one' s initial pleading.

Miss.R.Civ.P. 9(a) (emphasis added).

¶45. One can plainly read that Mississippi has a much more stringent pleading requirement than that of the federal courts. I understand our Rule 9(a) to require plaintiffs to properly allege capacity in their complaint. The fact that the federal courts struggle with their more liberal rule only serves to underscore the necessity of such an interpretation. Accordingly, I would affirm the trial court's granting of summary judgement to the officers on the basis of sovereign immunity.

¶46. For this reason, I respectfully dissent from the majority.

**ROBERTS AND SMITH, JJ., JOIN THIS OPINION.**

**BANKS, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶47. While I agree that the decision of the trial court must be reversed and the case remanded, I disagree with the majority's conclusion that the officers here enjoy qualified immunity merely because they must exercise discretion in pursuing fleeing suspects. The common law doctrine of qualified immunity for public officials is and should be of limited scope; it was never intended to shield members of a profession from liability for negligent acts merely because those acts are performed in the course of public employment. In my view, the discretion exercised by police officers in determining how and when to pursue a fleeing suspect is not the sort sought to be protected by common law qualified immunity. Accordingly, I dissent.

¶48. The majority distinguishes the present case from the situation in *Davis v. Little,* 362 So. 2d 642 (Miss. 1978), in which this Court declined to extend qualified immunity to a county supervisor who struck the plaintiff with a county truck while engaged in county business. I fail to see why, suddenly, situations involving police officers are qualitatively different such that qualified immunity should apply. The *Davis* Court cited several police officer cases in support of its decision. *See Jackson v. Smith,* 309 So. 2d 520 (Miss. 1975); *Poole v. Brunt,* 338 So. 2d 991 (Miss. 1976); *City of Meridian v. Beeman,* 175 Miss. 527, 166 So. 757 (1936). While the issue of qualified immunity was not discussed in these cases, the fact is that we have not previously had a problem with finding liability for negligent police drivers.

¶49. Moreover, the rationale underlying the doctrine of qualified immunity does not support the majority's result. As we explained in *Womble v. Singing River Hospital,* 618 So. 2d 1252 (Miss.1993), "[c]ommon law qualified immunity has traditionally sought to protect the discretion of public officials so that those officials would not be deterred by the threat of suit from making decisions and formulating policies that are in the public good." *Id.* at 1263 (citing *State of Mississippi for the Use and Benefit of Brazeale v. Lewis,* 498 So. 2d 321, 322 (Miss. 1986); *Pruett v. City of Rosedale,* 421 So. 2d 1046, 1052 (Miss. 1982); and *Hudson v. Rausa,* 462 So. 2d 689, 695 (Miss. 1984) (citing *Gregoire v. Biddle,* 177 F.2d 579, 581 (2d Cir. 1949))). *See also Wyatt v. Cole,* 504 U.S. 158, 166-68 (1992) (discussing history and rationales underlying common law public official immunity). *Womble* involved the question of whether medical personnel engaged in public service were qualifiedly immune. We found that day-to-day decisions regarding medical treatment were not inherently governmental and did not involve the formulation or implementation of public policy, and therefore "the notion of promoting governmental decisions that are in the public good is

completely inapplicable."[(1)] *Womble,* 618 So. 2d at 1263. Similarly, day-to-day decisions concerning the proper operation of a vehicle on the public streets in the performance of one's police duties do not involve the formulation of public policy.

¶50. By one way of thinking, the acts of a police officer in determining whether to pursue a fleeing suspect affects the "public good." Certainly, innocent people can be injured when an officer elects to pursue a suspect, and the proper exercise of an officer's discretion involves a careful balance of many factors, including the potential risk to members of the public. The exercise of this discretion should not, however, be confused with the broader concept of governmental policy-making.

¶51. The fundamental rationale for granting qualified immunity to those who guide our society's political, social and economic development is that, in the end, there is no genuine method of determining what is reasonable in those spheres of action. Such matters entail philosophical and ideological choices which are inherently legislative rather than judicial:

> Judicial review of basic policy-making decisions continues to be regarded by many as inappropriate because courts have no standards by which to judge such decisions. Judges and jurors are in no better position to evaluate the reasonableness of policy determinations than are those officials who are charged with making them. The reasonable man standard of tort law is not an appropriate measure for the political, social or economic desirability of government programs and the methods selected for pursuing them. State tort standards cannot adequately control those government decisions in which, to be effective, the decision maker must look to considerations of public policy and not merely to established professional standards or to standards of general reasonableness.

*Womble,* 618 So. 2d at 1263 (quoting *Pruett,* 421 So. 2d at 1051-52). *See also **T. M. v. Noblitt,*** 650 So. 2d 1340, 1343-44 (Miss. 1995).

¶52. In contrast to public policy decision-making, general standards exist by which to judge the actions of individual police officers. Like specific treatment decisions rendered by medical care professionals, an officer's actions may or may not be reasonable in a given situation. As such, ordinary tort principles are suitable for determining whether an officer has acted negligently under the totality of circumstances.

¶53. Of course, the *circumstances* under which government employees act vary widely depending upon their duties and the situations in which they are involved. It has traditionally been a question for the fact finder, however, whether a reasonably prudent person, *under the same or similar circumstances as the defendant finds himself*, would have acted as the officer did. *See, e.g., **Shields v. Easterling,*** 676 So. 2d 293, 297 (Miss. 1996); ***Peoples Bank & Trust Co. v. Cermack,*** 658 So. 2d 1352, 1361 (Miss. 1995). There is no compelling reason not to apply these ordinary principles of negligence where police officers engage in allegedly negligent acts which place the public in danger. Put simply, the question is whether a reasonably prudent police office in the same circumstances would have behaved similarly.

**McRAE, J., JOINS THIS OPINION.**

**McRAE, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶54. I agree with the ultimate disposition of this case by the majority, and I further concur with the rationale employed in section II.A. of the majority opinion. This case should go forward against the officers in their individual capacities. Nonetheless, I disagree with the majority's conclusion that summary judgment, based on the doctrine of sovereign immunity for the City of Oxford and the officers acting in their official capacities, was appropriate. Sovereign immunity is not applicable here.

¶55. In this case, Jeffries, the driver of the car that injured Mosby, was leaving the scene of the accident. Accordingly, Officer Moore was giving pursuit in relation to a misdemeanor charge at best. Nonetheless, Moore violated standard police procedure by traveling in excess of 70 m.p.h. in pursuit of the car driven by Jeffries and needlessly exacerbating the danger of the situation. Moore's actions, therefore, constituted reckless disregard of the safety and well-being of Mosby, and the City of Oxford is precluded from using the shield of immunity. Miss. Code Ann. § 11-46-9(c) (1997) (precluding qualified immunity for a governmental entity and its employees when the employee acts "in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of the injury). Even if the Oxford Police Department did not have in place a clear standard for pursuit of vehicles in misdemeanor cases, some policy should have been in place. The City, therefore, also was reckless by omission of such a policy, and immunity is precluded under that analysis as well.

¶56. The City of Oxford bases its claim of immunity on Miss. Code Ann. § 11-46-3, arguing that the State and its political subdivisions are immune from suits based on tortious acts or omissions. However, we are again faced with a situation where a plaintiff's cause of action against the State and its subdivisions was put off based on the Legislative delay of implementation. The accident in this case occurred in 1992. "What is important is that the Legislature has repeatedly postponed the effective date, so that the [Tort Claims] act--save only its reenactment of pre-Pruett immunity law--has been and remains law in futuro, law that has never acquired a present force." *Starnes v. City of Vardaman*, 580 So. 2d 733, 735-36 (Miss.1991). Since the statute never authorized an action against the State or its subdivisions, Mosby's suit was not and could not have been brought under it. Since Mosby's action was not brought under the provisions of a statute allowing suit, we may not hold it barred by sovereign immunity. *See also Gressett v. Newton Separate Mun. School Dist.*, 697 So. 2d 444, 446 (Miss. 1997) (McRae, J., dissenting).

---

1. *Womble* overruled *Marshall v. Chawla,* 520 So. 2d 1374 (Miss. 1988) and *Hudson v. Rausa,* 462 So. 2d 689 (Miss. 1984), to the extent that these cases "extended medical personnel in public service qualified immunity for treatment decisions." *Womble,* 618 So. 2d at 1263. The holding in *Womble* has since been limited (erroneously, in my view) so as not to apply to prison doctors. *See Sparks v. Kim,* 701 So. 2d 1113, 1119-21 (Miss. 1997) (Banks, J., dissenting in part).