## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 2000-CA-00128-SCT

*BOBBY BRIDGES*

*v.*

*PEARL RIVER VALLEY WATER SUPPLY DISTRICT AND HAROLD GRAY*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/21/1999 |
| TRIAL JUDGE: | HON. MARCUS D. GORDON |
| COURT FROM WHICH APPEALED: | LEAKE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JAMES G. McLEMORE, JR. |
| | JOHN H. DOWNEY |
| ATTORNEYS FOR APPELLEES: | JAMES LEE KELLY |
| | SUSAN LUM RUNNELS |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND REMANDED - 04/05/2001 |
| MOTION FOR REHEARING FILED: | 4/19/2001; denied 9/6/2001 |
| MANDATE ISSUED: | 9/13/2001 |

### BEFORE BANKS, P.J., MILLS AND COBB, JJ.

### BANKS, PRESIDING JUSTICE, FOR THE COURT:

¶1. Bobby Bridges appeals from a circuit court judgment granting the Pearl River Valley Water Supply District and Harold Gray summary judgment and holding that they were immune under the Mississippi Tort Claims Act, Miss. Code Ann. § § 11-46-1 to -23 (Supp. 2000). We conclude that it was error to grant summary judgment because genuine issues of material fact exist on whether supervision of a security officer is a discretionary act and whether the security officer acted with malice outside the scope of his employment.

### I.

### a.

¶2. Harold Gray ("Gray") worked as a security officer for the Pearl River Valley Water Supply District ("District") beginning in June of 1997. Gray and Bobby Bridges ("Bridges") had two encounters that are relevant to this lawsuit; the first encounter occurred in June 1997 and the second occurred in August 1997. In the June 1997 incident, Bridges went to Gray's house, and a confrontation ensued on Gray's front porch. Gray filed charges against Bridges for the crimes of simple assault, wilful trespass, and public drunkenness. In the August confrontation, Gray arrested Bridges on the District's property and charged him with possession of beer in a dry county, public drunkenness, and resisting arrest. Bridges claims that during the

August arrest Gray broke his arm and tore his rotator cuff, causing physical, mental, and emotional pain and suffering. Bridges also asserts that at the time of the second confrontation he had previously complained to Gray's superiors about Gray's antagonistic attitude toward him.

¶3. Subsequently, in a consolidated trial, the Leake County Justice Court convicted Bridges of simple assault in the June confrontation and public drunkenness and resisting arrest in the August incident. Bridges did not appeal the convictions. The justice court acquitted Bridges of all other charges. Thus, the justice court acquitted Bridges of trespassing, public drunkenness, and possession of beer in a dry county.

**b.**

¶4. Bridges filed a complaint against the District and Gray for damages in the Circuit Court of Madison County alleging: (1) negligent hiring; (2) negligent training; (3) negligent supervision; (4) that Gray developed a malicious attitude towards Bridges, and (5) that Gray used excessive force in arresting Bridges in August 1997. Both defendants responded with motions to dismiss alleging that Bridges failed to comply with the notice provisions of Miss. Code Ann. § 11-46-11 and filed suit in the wrong circuit court. The District also answered raising the defense of immunity pursuant to the Mississippi Tort Claims Act, Miss. Code Ann. § § 11-46-1 et seq., including Miss. Code Ann. § 11-46-9(1)(b)(c)(d) & (g). The trial court entered an agreed order finding Bridges had given proper notice. The court transferred the case to the Circuit Court of Leake County for proper venue.

¶5. Subsequently, Gray retained separate counsel and filed an amended and separate answer alleging immunity under § 11-46-9 and that Bridges' convictions estopped Bridges from establishing malicious prosecution. Gray filed two motions to dismiss. The first motion argued that Bridges did not provide individual notice to Gray pursuant to the Tort Claim Act. Further, since his actions were within the scope of his employment, Gray argued that he should be dismissed from the suit. The second motion alleged that pursuant to Miss. Code Ann. § 11-46-7, no employee could be held personally liable for acts occurring within the scope of his employment. This motion also alleged that any of Gray's actions against Bridges were done within the course and scope of employment. Bridges responded to Gray's Request for Admissions and agreed that Gray was within the scope of employment; however, Bridges maintained that personal malice and ill will motivated Gray's actions. On November 9, the trial court orally dismissed Gray from the suit. The court entered the order dismissing Gray in his individual capacity on November 23.

¶6. On November 15, the District filed a motion to dismiss or for summary judgment contending that § 11-46-9 (1)(c) prohibited liability, even in reckless disregard, because Bridges had been engaged in criminal activity at the time of injury. Further, § 11-46-9(1)(d) prohibited suit based upon negligence in hiring, training or supervising since those activities were discretionary duties. The trial court issued a bench ruling granting the District summary judgment on November 23, 1999.

¶7. On December 15, Bridges filed a Motion to Reconsider the Oral Ruling of Summary Judgment. In this motion, Bridges further alleged that Gray acted with malice and offered to submit affidavits supporting his allegations. Subsequently, the trial court issued an order granting summary judgment finding Bridges' convictions supported the inference of criminal activity, Gray was acting in the course and scope of employment at the time of the arrest, and that the hiring, training, and supervision of personnel are discretionary functions of a governmental entity. Bridges now appeals that summary judgment.

**II.**

¶8. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56(c). On appeal, this Court reviews a motion for summary judgment de novo. *Mosby v. Moore*, 716 So.2d 551, 557 (Miss. 1998).

**a.**

¶9. The Mississippi Tort Claims Act, specifically § 11-46-9(1)(c), governs Bridges' claims against the District and Gray. Section 11-46-9(1) exempts government entities and their employees from liability for certain torts committed by the employee while acting within the course and scope of their employment. Subsection (c) of the statute carves out a specific exception which exempts police officers from liability while acting within the course and scope of employment. An officer and his governmental employer can only be held liable if the officer acted in reckless disregard of the safety and well-being of others not engaged in criminal activity at the time of the injury. The statute reads in pertinent part:

> (1) A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:
>
> * * *
>
> (c) Arising out of any act or commission of any employee of a governmental entity engaged in the performance or execution of duties or activities relation to police or fire protection unless the employee acted in reckless disregard of the safety and well-being of any person **not engaged in criminal activity at the time of injury.**

Miss. Code Ann. § 11-46-9(1)(c)(Supp. 2000)(emphasis added).

¶10. Bridges maintains that the Legislature did not intend to include all crimes, especially minor misdemeanors, within the construct of being "engaged in criminal activity" of § 11-46-9.

¶11. No authority or logic supports this contention. While we have held that the criminal activity supporting this exemption must be more than fortuitous, we have never suggested that such activity must rise to the level of a felony. *See City of Jackson v. Perry*, 764 So.2d 373 (Miss. 2000).

¶12. The District argues that the intent of the statute is to protect law enforcement officers and their governmental employers from lawsuits arising out of the performance of their duties, when an alleged victim is involved in criminal activity. Further, the statute fails to protect officers, the District notes, who are grossly negligent or intentional tortfeasors from liability. The District cites *City of Jackson v. Perry* for its holding that an officer may be liable for acting in reckless disregard in circumstances where the victim is not involved in criminal activity or the criminal activity is merely fortuitous and has no casual nexus between the officer's conduct and the criminal activity. *Id.* at 378-79.

¶13. Here, unlike *City of Jackson*, there is sufficient evidence indicating a causal nexus between Bridges' injuries and his arrest for criminal activities. Where an officer has probable cause to arrest and proceeds to do so, there is the requisite nexus between criminal activity and the action causing injury. Thus, the government is immune and, absent malice, the officer is also immune.

**b.**

¶14. Bridges contends the District is vicariously liable for his injuries because (1) Gray's actions were conducted in the scope of his employment and (2) because the District negligently supervised Gray. Summary judgment is inappropriate, he alleges, because "supervision or control" of an employee is not a discretionary function as contemplated by § 11-46-9(d).

¶15. In determining whether governmental conduct is discretionary the Court must answer two questions: (1) whether the activity involved an element of choice or judgment; and if so, (2) whether the choice or judgment in supervision involves social, economic or political policy alternatives. *Jones v. Miss. Dep't of Transp.*, 744 So.2d 256, 260 (Miss. 1999). Therefore, the *Jones* test requires a determination of (1) whether the supervision of security officers involves an element of choice or judgment; and if so (2) whether the choice or judgment involved social, economic, or political policy.

¶16. Section 51-9-175, the statute which authorizes the appointment of security officers by the District, contains no provisions that direct the District on its supervision of security officers.[1] It follows that the District has to make a judgment as to how to supervise appointed officers; thus, satisfying the first step in the *Jones* test.

¶17. The second step in *Jones* involves a determination as to whether the judgment on how to supervise security officers involves public policy. *Id.* In the instant case, the trial court did not make a determination, before granting summary judgment, whether the supervision of security officers is grounded in public policy and is, thus, discretionary. Although no specific authority, as to whether supervision of an employee is a matter of public policy, exists in Mississippi.

¶18. Other jurisdictions determining whether governmental immunity is appropriate have analyzed whether the discretionary decisions were grounded in public policy. For example, the Indiana Supreme Court in *Peavler v. Bd. of Comm'rs*, 528 N.E. 2d 40, 48 (Ind. 1988), held summary judgment was inappropriate where the counties did not demonstrate a policy-oriented decision-making process. *Id.* at 47-48. The *Peavler* Court acknowledged that government immunity still exists for actions that involve actual policy-making decisions. *Id.* at 45-48.[2] *See also* *Kaisner v. Kolb*, 543 So.2d 732, 737 (Fla. 1989)(denying immunity from claims arising out of a police officer's negligence by failing to use proper procedure in a traffic stop because officer's decision of where the driver should stand was not essential to the realization of any policy);[3] Jim Fraiser, *A Review of the Substantive Provisions of the Mississippi Governmental Immunity Act: Employees' Individual Liability, Exemptions to Waiver of Immunity, Non-jury Trial, and Limitation of Liability*, 68 Miss. L.J. 703, 771-90 (1999) (discussing the distinction between the planning/operational test and the discretionary/ministerial test).

¶19. The record does not contain any evidence that the District engaged in a policy-oriented decision-making process concerning the supervision of employees. It follows that the grant of summary judgment to the District on this issue was premature.

**c.**

¶20. As his last point of error, Bridges focuses on the trial court's determination that, pursuant to § 11-46-7 and the stipulation that Gray was at all times within the course and scope of his employment, Gray was not personally liable for his injuries. Bridges argues that §§ 11-46-5(2) and 11-46-7(2) provide that if an

employee acts with malice, he is not considered to be acting within the course or scope of employment. Therefore, his argument continues, because Gray maintained a malicious attitude and personal dislike for Bridges and singled him for abusive treatment, he was no longer considered to be within the scope of employment.

¶21. Section 11-46-5(2) states that an employee is not considered to be acting within the scope of employment and a governmental entity is not considered to waive immunity for an employee's conduct if the employee's conduct involves malice. Section 11-46-7(2) states no employee will be liable for acts or omissions occurring within the course and scope of employment; however, the statute provides exceptions in which the employee is deemed to waive immunity. For example, an employee is not considered as acting within the course of employment for malicious conduct. Both statutes read in pertinent part:

§ 11-46-5(2):

For the purposes of this chapter an employee **shall not** be considered to be acting within the course and scope of employment and a governmental entity **shall not be liable** or be considered to have waived immunity for any conduct of its employee if the employee's conduct constituted fraud, **malice**, libel . . .(emphasis added).

§ 11-46-7(2):

[B]ut no employee shall be held personally liable for acts or omissions occurring within the course and scope of the employee's duties. . .[A]n employee **shall not be considered as acting within the course and scope of his employment** and a governmental entity shall not be liable or be considered to have waived immunity for any conduct of its employee if the employee's conduct constituted fraud, **malice**, libel. . .(emphasis added).

¶22. These statutes unambiguously state that an employee can be found to be acting outside the course and scope of employment if acting with malice. Bridges' complaint and Motion to Reconsider Oral Ruling clearly allege that Gray acted with malice during his interaction with Bridges. Moreover, Bridges' counsel noted at the hearing and in his motions that pursuant to the Act, Gray is immune unless he acted maliciously.

¶23. Subsequently, the trial judge found that Gray was acting within the course and scope of his employment and, accordingly, was immune from suit. When reviewing the statute during the argument the trial judge erroneously concluded that malice was not an element in the statute:

BY MR. DOWNEY [ATTORNEY FOR BRIDGES]: It's 11-46-5, is the one that has the part about malice, Judge, subsection 2. That is the right section; isn't it?

BY MR. KELLY [ATTORNEY FOR GRAY]: Yes, and there is some more in 1997.

BY THE COURT: Now, let me ask you this, Mr. Downey. You say that --- I believe you are saying that he - - - **you are of the opinion that he was within the course and scope of his employment, but he was acting through malice**.

BY MR. DOWNEY: Yes, sir.

BY THE COURT: **I don't agree with malice as being part of sub- section 2. It says if the**

**employee's conduct constituted fraud, liable, slander, defamation, or any other criminal offense.**

BY MR. DOWNEY: Yes, sir.

BY THE COURT: **Now, I read nothing in there about malice**.

(emphasis added). Clearly, the trial court misread the statute and based its decision on that misreading.[(4)](#)

### III.

¶24. For the foregoing reasons, the judgment of the circuit court is reversed, and this matter is remanded to that court for further proceedings consistent with this opinion.

¶25. **REVERSED AND REMANDED.**

**PITTMAN, C.J., McRAE, P.J., MILLS, WALLER, COBB, DIAZ AND EASLEY, JJ., CONCUR. SMITH, J., NOT PARTICIPATING.**

1. At the time pertinent to this case, Miss. Code Ann. § 51-9-175 (1) (1999) provided:

(1) The board of directors of the district may appoint and commission qualified persons as security officers of the district. Any such security officer so appointed shall be a full-time employee of the district . . . and shall at all times be answerable and responsible to the board of directors of the district.

2. The *Peavler* Court outlined several questions for the trial court to use in determining whether the governmental action furthered public policy: 1) The nature of the conduct - - a) whether the conduct has a regulatory objective; b) whether the conduct involved a balancing of factors without reliance on a readily ascertainable rule or standard; c) whether the conduct requires a judgment based on policy decisions; d) whether the decision involved adopting general principles or applying them; e)whether the conduct involved establishment of plans, specifications and schedule; and f) whether the decision involved assessing priorities, weighing of budgetary considerations or allocation of resources. 2) The effect on governmental operations - - a) whether the decision affects the feasibility or practicability of a government program; and b)whether liability will affect the effective administration of the function in question. 3) The capacity of the court to evaluate the propriety of the government's action - - Whether the tort standards offer an insufficient evaluation of the plaintiff's claim. *Peavler*, 528 N.E.2d at 46.

3. The *Kolb* Court utilized a four-prong test in its analysis: 1) does the challenged act, omission or decision necessarily involve a basic governmental policy, program or objective; 2) is it essential to the realization of any such policy, as opposed to one which would not change the policy's course of direction; 3) does the act require basic policy evaluation or judgment; and 4) does the agency involved possess the lawful authority to act in that fashion? *Kolb,* 543 So.2d at 737.

4. In a motion for reconsideration the plaintiff offered to submit affidavits on this issue should the court have deemed them necessary to its decision.