## IN THE SUPREME COURT OF MISSISSIPPI

### NO. 98-CA-00510-SCT

*DANNY G. JONES*

*v.*

*BAPTIST MEMORIAL HOSPITAL-GOLDEN TRIANGLE, INC.; LOWNDES COUNTY, MISSISSIPPI; IRENE CUNNINGHAM; ANITA DAVIS; T. BILINKSKI; BARBARA LITTLE; CAROLYN DESOTO; DIANE BAINE; AND UNKNOWN OR MISNAMED NURSES WHO TREATED DANNY JONES*

### CONSOLIDATED WITH

### NO. 98-CA-00551-SCT

*DANNY G. JONES*

*v.*

*GOLDEN TRIANGLE REGIONAL MEDICAL CENTER, A HOSPITAL; LOWNDES COUNTY, MISSISSIPPI; IRENE CUNNINGHAM; ANITA DAVIS; T. BILINKSKI; BARBARA LITTLE; CAROLYN DESOTO; DIANE BAINE; AND UNKNOWN OR MISNAMED NURSES WHO TREATED DANNY JONES*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/04/98 |
| TRIAL JUDGE: | HON. JOHN M. MONTGOMERY |
| COURT FROM WHICH APPEALED: | LOWNDES COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | DENNIS HARMON |
| | SHAY SAMPLES |
| ATTORNEYS FOR APPELLEES: | LAUREN J. HUTCHINS |
| | DOUGLAS R. DUKE |
| | TAYLOR B. SMITH |
| | ARMSTRONG WALTERS |
| NATURE OF THE CASE: | CIVIL - MEDICAL MALPRACTICE |
| DISPOSITION: | AFFIRMED - 3/18/99 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 4/14/99 |

**EN BANC.**

**MILLS, JUSTICE, FOR THE COURT:**

### STATEMENT OF THE CASE

¶1. On March 6, 1998, the circuit court of Lowndes County granted defendants' separate motions to dismiss, or in the alternative, for summary judgment thereby dismissing from suit defendants Baptist Memorial Hospital ("BMH"), Irene Cunningham, Anita Davis, Barbara Little, Terri Bilinski, and Carolyn Desoto (collectively, "nurse defendants"). On March 23, 1998, the circuit court issued an order dismissing defendants Lowndes County, Mississippi and Golden Triangle Regional Medical Center ("Golden Triangle") from the action. As a result of the dismissals, all claims against all defendants were adjudicated.

¶2. Danny G. Jones filed his first complaint alleging medical malpractice on July 15, 1994 (94-075-CV1) and later filed a second complaint on February 10, 1995 (95-015-CV1). The allegations in the latter complaint are consistent with the first; however, the latter added Diane Baine as a nurse defendant. Each complaint asserts Mr. Jones suffered permanent paralysis below the waist resulting from acts and omissions constituting medical negligence committed by the nurses employed by Golden Triangle.[1] Specifically, during the period between January 29, 1993 and January 31, 1993 the nurses allegedly failed to diagnose and treat an epidural abscess resulting from scratches and abrasions Jones obtained while deer hunting during the previous week. Jones lost permanent use of both legs as a result of the abscess.

¶3. At the time the alleged negligence transpired, Golden Triangle was a community hospital owned by Lowndes County, Mississippi and operated as a political subdivision of the State of Mississippi. On March 19, 1993, Baptist Memorial Health Care System, Inc. leased from Lowndes County the facilities formerly operated by Golden Triangle and thereafter operated the hospital under the name of Baptist Memorial Hospital.

¶4. Paragraph 19.5 of the lease agreement states, "Any and all claims arising from the incidents on or before the commencement date shall be the sole responsibility of the Lessor [Golden Triangle]." Relying on this exculpatory language, the lower court granted summary judgment in favor of BMH, finding BMH was not liable for any negligent acts or omissions which occurred before BMH leased the premises from Golden Triangle. Further, the lower court found the nurses immune from liability by virtue of the Mississippi Sovereign Immunity Act. Finally, on March 23, 1998 the Circuit Court dismissed Lowndes County, Mississippi and Golden Triangle from the suit due to Jones's failure to file a "notice of claim" with Lowndes county as required by Miss. Code Ann. § 11-46-11. Aggrieved, Jones assigns the following issues for review by this Court:

> **I. WHETHER THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF NURSE DEFENDANTS PURSUANT TO THE DOCTRINE OF SOVEREIGN IMMUNITY.**
>
> **II. WHETHER THE TRIAL COURT ERRED IN DISMISSING LOWNDES COUNTY, MISSISSIPPI AND GOLDEN TRIANGLE REGIONAL MEDICAL CENTER ON THE GROUND THAT THE SOVEREIGN IMMUNITY ACT BARRED SUIT AGAINST DEFENDANTS; THAT JONES FAILED TO FILE A "NOTICE OF CLAIM" WITHIN ONE YEAR OF THE DATE OF THE INJURY; AND THAT JONES FAILED TO MEET THE APPLICABLE STATUTE OF LIMITATIONS REQUIREMENT.**
>
> **III. WHETHER DEFENDANTS LOWNDES COUNTY, MISSISSIPPI AND GOLDEN TRIANGLE REGIONAL MEDICAL CENTER WAIVED THEIR RIGHT TO ASSERT SOVEREIGN IMMUNITY BY PURCHASING LIABILITY INSURANCE.**

**IV. WHETHER THE TRIAL COURT ERRED IN DISMISSING BAPTIST MEMORIAL HOSPITAL-GOLDEN TRIANGLE, INC.**

<u>ANALYSIS</u>

¶5. Whether all defendants were properly dismissed in the present case turns upon whether the defendants were shielded by the law of sovereign immunity at the time the cause of action accrued. The time period at issue includes three days: January 29, 1993 to January 31, 1993. The Circuit Court relied on the Sovereign Immunity Act, Miss. Code Ann. § 11-46-1, et. seq. in granting summary judgment and dismissing all defendants. However, the lower court's statutory reliance was misplaced. The pertinent provisions of the present Sovereign Immunity Act were not finally implemented by the legislature until April 1, 1993. The applicable statutes in the instant case are found in the 1992 Special Session Amendments to Mississippi Code Annotated (1972). Specifically, § 11-46-3 and § 11-46-16 of House Bill No. 2 (1992) as well as Miss. Code Ann. § 11-46-7(2) determine the outcome of this case, as they are controlling regarding the law of sovereign immunity in causes of action which accrued from September 16, 1992 until April 1, 1993. ***Laws of the 1992 Extraordinary Session, ch. 3 (September 1992)**, see also* Richard Smith-Monahan, *Sovereign Immunity in Mississippi 1982 to 1995: A Practical Tool for Lawyers and Judges,* 16 Miss. C. L. Rev.215, 222 (1995). The issues presented to this Court shall be addressed accordingly.

**I. THE TRIAL COURT DID NOT ERR IN GRANTING SUMMARY JUDGMENT IN FAVOR OF NURSE DEFENDANTS PURSUANT TO MISS. CODE ANN. § 11-46-7(2).**

¶6. Danny Jones' complaints generally allege the nurse defendants were negligent in failing to assess, evaluate, and advise other health care authorities as to Jones' progress, thereby falling below the minimum standard of care required of health care providers in the medical community. The trial court dismissed nurse defendants Irene Cunningham, Barbara Little, Terri Bilinski, Anita Davis and Carolyn Desoto based on the employee protection set forth in the Sovereign Immunity Act (Section 11-46-1, et seq.). As employees of a governmental entity, the nurse defendants are shielded by Miss. Code Ann. § 11-46-7(2) and are not liable for acts or omissions which occurred within the course and scope of their duties. [(2)](#) Section 11-46-7(2) as amended in 1991 reads:

> From and after July 1, 1992, as to the state, and from and after October 1, 1992, as to political subdivisions, an employee may be joined in an action against a governmental entity in a representative capacity if the act or omission complained of is one for which the governmental entity may be liable, *but no employee shall be held personally liable for acts or omissions occurring within the course and scope of the employee's duties*.

Miss. Code Ann. § 11-46-7(2)(1991)(emphasis added). Moreover, Miss. Code Ann. § 11-46-5 (1991) states that "it shall be a rebuttable presumption that any act or omission of an employee within the time and at the place of his employment is within the course and scope of his employment."

¶7. In ***Mosby v. Moore**, 716 So. 2d 551 (Miss. 1998)*, we found the lower court correctly applied Miss. Code Ann. §11-46-3 (1992) in a suit against the city of Oxford and Oxford police officers. Regarding the issue of individual immunity, we held the officers would not be protected by statutory immunity if sued in their individual capacties. The trial court in *Mosby* did not address Miss. Code Ann. § 11-46-7(2)(1991), nor was its application urged on appeal. Therefore, *Mosby* must be read as limited to its own facts and issues.

¶8. In the present case, the trial court held the alleged negligence of the nurse defendants occurred "within the course and scope" of their duties; thus, no liability attached under § 11-46-7(2)(1991) and they are individually immune in this action.

## II. THE TRIAL COURT COMMITTED HARMLESS ERROR IN DISMISSING LOWNDES COUNTY, MISSISSIPPI AND GOLDEN TRIANGLE REGIONAL MEDICAL CENTER ON THE GROUND THAT THE SOVEREIGN IMMUNITY ACT BARRED SUIT AGAINST ALL DEFENDANTS; THAT JONES FAILED TO FILE A "NOTICE OF CLAIM" WITHIN ONE YEAR OF THE DATE OF THE INJURY; AND THAT JONES FAILED TO MEET THE APPLICABLE STATUTE OF LIMITATIONS REQUIREMENT.

¶9. The applicable statute regarding immunity of the state and its political subdivisions at the time the present cause of action accrued is § 11-46-3 as amended in September 1992, which provides:

SECTION 1. Section 11-46-3, Mississippi Code of 1972, is amended as follows:

(1) The Legislature of the State of Mississippi finds and determines as a matter of public policy and does hereby declare that, except as provided in subsection (2) of this section, from and after the passage of House Bill No. 2, 1992 First Extraordinary Session, the "state" and its "political subdivisions," as such terms are defined in Section 11-46-1, shall not be liable and shall be immune from suit at law or in equity on account of any wrongful or tortious act or omission, including but not limited to libel, slander or defamation, by the state or its political subdivisions, or any such act or omission by any employee of the state or its political subdivisions, notwithstanding that any such act or omission constitutes or may be considered as the exercise or failure to exercise any duty, obligation or function of a governmental, proprietary, discretionary or ministerial nature and notwithstanding that such act or omission may or may not arise out of any activity, transaction or service for which any fee, charge, cost or other consideration was received or expected to be received in exchange therefore.

(2) The immunity granted under subsection (1) of this section shall not be applicable to an incorporated municipality for any wrongful or tortious act or omission by such municipality or any employee of such municipality that arises out of the exercise or failure to exercise any duty, obligation or function of a proprietary nature.

*Laws of the 1992 Extraordinary Session*, ch. 3 § 1 (September 1992).

¶10. The lower court's reliance upon the provisions of the Sovereign Immunity Act in dismissing Lowndes County and Golden Triangle was erroneous; however, the parties were properly dismissed pursuant to § 11-46-3 as amended in September 1992. Consequently, we find no reversible error pertaining to this issue.

¶11. The one year statute of limitations period as well as the "notice of claim" requirement are both contained within the Sovereign Immunity Act which was not in effect at the time the cause of action in the present case accrued. It is argued that the decision of the lower court to dismiss Lowndes County and Golden Triangle was nevertheless correct due to the retroactivity of the provisions of the Act. This court addressed the retroactivity of the Sovereign Immunity Act in *Sparks v. Kim*, 701 So. 2d 1113 (Miss. 1997) wherein Justice Prather wrote:

This court agrees with *Sparks* that the trial judge erred in dismissing the lawsuit based on a retroactive application of Miss. Code Ann. § 11-46-9(m). Section 11-46-9 clearly states that it is effective from and after passage, and the statute indicates that paragraph (m) was rewritten in 1994.

*Sparks* at 1114-15. Although the present case concerns the retroactivity of numerous sections of the Sovereign Immunity Act rather than solely paragraph (m) of § 11-46-9, the intent of this Court is clear. If the statutory language mandates that the statute is to apply from and after passage, it is not to be applied retroactively to causes of action which accrued prior to passage of the statute. The cause of action in this case accrued prior to the enactment of § 11-46-3 (providing immunity to the state and its political subdivisions, approved April 1, 1993) and 11-46-11 (providing for notice of claim requirement and one year statute of limitations, approved April 1, 1993).

¶12. The lower court dismissed defendants Lowndes County, Mississippi and Golden Triangle Regional Medical Center pursuant to the requirement in § 11-46-11 that Jones file a "notice of claim" with Lowndes County as a prerequisite to the filing of a lawsuit against any governmental entity. The court ruled § 11-46-11 was applicable to the present case because Jones had filed suit against governmental entities after April 1, 1993, the date the statute was passed. However, the pertinent dates to consider are January 29-31, 1993, when the cause of action accrued. *See*, *Sparks v. Kim*, 701 So. 2d 1113 (Miss. 1997)[(3)]. Thus, since § 11-46-11 does not apply, Jones was not required to file a "notice of claim" with Lowndes County prior to filing suit.

¶13. Likewise, Jones is not restricted by the one year statute of limitations contained in § 11-46-11. In fact, Jones had two years in which to commence an action against the nurse defendants and the hospital pursuant to Miss. Code Ann. § 15-1-36 which applies to malpractice actions accruing on or after July 1, 1989. Further, no statute of limitations is applicable to Lowndes County since no limitations period is to run against the state or any subdivision thereof pursuant to Miss. Code Ann. § 15-1-51. Jones filed his first complaint on July 15, 1994, thereby commencing the action. On February 7, 1995 Jones filed a subsequent complaint which added Diane Baine as a nurse defendant. Since Jones' initial filing occurred well within two years from the time of the alleged negligence and he was not required to serve the county with a "notice of claim" prior to the action, Jones was not procedurally barred from suing Lowndes County or Golden Triangle.

¶14. Lowndes County and Golden Triangle were properly dismissed from suit pursuant to the broad immunity granted to the "state" and its "political subdivisions" by § 11-46-3, Laws of the 1992 Extraordinary Session, ch.3 § 1 (September 1992). Both the county and the community hospital are specifically included in the definition of "political subdivision" as set out in § 11-46-1(i). Though the rationale of the lower court in dismissing the county and community hospital was flawed, the final result was correct. Thus, we find no reversible error concerning this issue.

### III. NEITHER LOWNDES COUNTY NOR GOLDEN TRIANGLE REGIONAL MEDICAL CENTER WAIVED ITS RIGHT TO ASSERT SOVEREIGN IMMUNITY BY PURCHASING LIABILITY INSURANCE.

¶15. Section 11-46-16(3), Laws of the 1992 Extraordinary Session, ch. 3 § 3 specifically provides:

(3) Except as otherwise provided in Section 19-7-8, Mississippi Code of 1972, a governmental entity which has in effect liability insurance to cover wrongful or tortious acts or omissions of such

governmental entity or its employees may, in its discretion, pay any amount of a claim that is within the deductible amount, if any, contained in such liability insurance policy. The determination of whether funds are available to pay any claim that is within the deductible amount and whether to pay a claim in any event shall be within the sole and exclusive discretion of the governmental entity. The authority granted to governmental entities under this subsection does not create a right in any claimant to demand or receive compensation for a claim; and *nothing in this subsection shall be considered as a waiver of the immunity granted under Section 11-46-3*. The provisions of this subsection only extend to governmental entities the discretionary authority to pay claims that otherwise would not be authorized without an act of the Legislature. (emphasis added).

¶16. Although the result in the present case is harsh, Lowndes County and Golden Triangle were protected by the language of the statute at the time Mr. Jones's cause of action accrued. The statute allowed the defendants to maintain liability insurance if they chose to do so. If so, they would have waived immunity to the extent of their insurance coverage. Since Lowndes County and Golden Triangle were covered by a "claims made" policy, as discussed further below, and since Jones' claim was not made during the term of such policy, no waiver occurred in the present case. Likewise, no waiver occurred regarding BMH due to the exculpatory provisions of the lease agreement. The discretion to pay claims as expressed in the statute applies only to the deductible amount of the policy. Though a political entity waives the cloak of sovereign immunity to the extent of its liability insurance, the fact that it may carry insurance as protection from liability does not alone waive its right to assert sovereign immunity as a defense to a claim.

## IV. THE TRIAL COURT CORRECTLY IN DISMISSED BAPTIST MEMORIAL HOSPITAL FROM THE LAWSUIT.

### A. "Tail Insurance"

¶17. On March 19, 1993 Baptist Memorial Hospital leased the community hospital facilities from Lowndes County, Mississippi. Jones contends that the lease agreement obligated BMH to purchase "tail insurance", and the failure of BMH to purchase tail insurance constitutes a breach of the agreement . As a result, Jones argues, BMH is obligated to indemnify Lowndes County and Golden Triangle for any judgment rendered against either party for causes of action which would otherwise have been covered by the "tail insurance." We have not previously defined "tail insurance" in prior case law. An explanation of the term is necessary for this opinion. Professional liability insurance policies are generally categorized into two types: "occurrence" policies and "claims made" policies. A "claims made" policy protects the holder only against claims made during the life of the policy, while an "occurrence" policy protects the policyholder from liability for any act done while the policy is in effect. *St. Paul Fire & Marine Ins. Co. v. Barry*, 438 U.S. 531, 535, fn. 3 (1978). The two types are distinguishable in that a "claims made" policy covers losses caused by any wrongful action taking place at any point in time *as long as the claim is made during the period the policy is in effect*. Conversely, an "occurrence" policy only protects against liability for wrongful acts which occurred during the term of the policy, i.e., the policyholder is protected by an "occurrence" policy even if a claim is made against the holder after expiration of the policy *if the wrongful act took place while such policy was in effect*[(4)]. A "gap" in coverage may occur if a "claims made" policy is followed by an "occurrence" policy and either (1) a wrongful act occurred during the term of the "claims made" policy but no claim was filed before expiration of the policy; or (2) a wrongful act occurred after expiration of the "claims made" policy but before inception of the "occurrence" policy. "Tail insurance" bridges the "gap."

¶18. The lower court, relying on the exculpatory language contained in the lease agreement, dismissed BMH from the suit without addressing the issue of whether BMH was required to purchase "tail insurance". We find no obligation in the lease agreement language requiring BMH to purchase "tail insurance" in this case.

¶19. Paragraph 12.2 of the lease agreement reads:

12.2 Supplemental Insurance. As of the Commencement Date [March 19, 1993], Lessor [Lowndes County, Mississippi and Golden Triangle Regional Medical Center] may pay from the funds of the Hospital to purchase for Lessor an extended reporting endorsement providing insurance coverage for professional and general liability for claims made in respect of periods through the Commencement Date ("Tail Insurance"). If the purchase of Tail Insurance as of the Commencement Date is unnecessary because the Lessee [BMH] includes Lessor under its policy but should the purchase of Tail Insurance become necessary after the Commencement Date the Lessor shall approve such tail insurance, which approval shall not be unreasonably withheld, and the payment for such Tail Insurance shall be deemed to constitute a current liability of Lessor as of the Commencement Date and the Lessee shall have the right to decrease the next installment payment for the Current Assets by such amount or in the event all such installments shall have been paid the payment by the Lessee for such tail insurance shall constitute an indemnifiable obligation of Lessor and the Lessee shall have a right to submit a bill for the same and be paid from the principal of the Foundation Fund. Lessee expressly does not assume any obligation of any kind or nature whatsoever with respect to any claim arising out of, resulting from, or incident to any event which occurred or any state of facts which existed prior to the Commencement Date (even though not asserted until after the Commencement Date and even though not discovered until after the Commencement Date). In addition, Lessor may pay from the unrestricted funds of the Hospital the necessary premium for supplemental insurance policies in respect of directors and officers coverage providing for an extended reporting period for claims made in respect of periods through the Commencement Date.

¶20. According to the language of the contract, any obligation to purchase supplemental insurance would not have arisen until March 19, 1993, the Commencement Date of the lease. As of the Commencement Date and until January 1, 1994 Golden Triangle was covered by a "claims made" policy issued by State Farm Insurance Company. On the Commencement Date of the lease agreement, Golden Triangle added BMH to its insurance policy. On January 1, 1994, the day the former policy expired, BMH purchased a separate "claims made" policy naming BMH as the sole insured.

¶21. Golden Triangle was insured as of the Commencement Date of the lease agreement; thus, the purchase of tail insurance was not necessary on that date. Further, there was no obligation to purchase tail insurance after the Commencement Date because there was no "gap" in coverage. The "claims made" policy held by Golden Triangle and also covering BMH extended past the Commencement Date. Upon its expiration, BMH purchased another "claims made" policy. Accordingly, "tail insurance" was simply not required.

**B. Insurance Coverage**

¶22. Although the hospitals were insured before and after the Commencement Date, neither insurance policy held by the hospitals effectively covered Jones' claim. For example, the "claims made" policy held by Golden Triangle expired on January 1, 1994 and therefore did not cover the claim made by Jones on July 26, 1994. The "claims made" policy held by BMH began on January 1, 1994 and as such should provide

coverage for the claim made on July 26 of the same year. However, the exculpatory language contained in the lease agreement exonerates BMH from all liability for actions which occurred prior to the Commencement Date. Unfortunately, Jones' claim did not fall within the scope of either insurance policy.

## C. Third Party Beneficiary Status

¶23. Jones additionally argues that he is a third party beneficiary of the lease agreement. This Court has previously held "[t]he right of a third party beneficiary to maintain an action on the contract must 'spring' from the contract terms. . . No right against the contract promisor or promisee is acquired by a mere incidental beneficiary." *Trammel v. State*, 622 So. 2d 1257, 1260 (Miss. 1993). The parties to the lease agreement in the instant case did not specifically intend to benefit Jones through providing an option to purchase tail insurance. Jones was at most an incidental beneficiary of the insurance coverage contemplated by the parties. The contract simply does not support Jones's argument that he acquired third party beneficiary status via the lease agreement.

¶24. Further, since no "gap" existed after the Commencement Date of the lease, BMH was not obligated to purchase "tail insurance" for the benefit of Golden Triangle. Consequently, BMH was properly dismissed from the suit.

## CONCLUSION

¶25. The lower court in the present case reached the correct result. Golden Triangle, BMH, and Lowndes County, Mississippi were properly dismissed from suit pursuant to Miss. Code Ann. § 11-46-3 as amended in 1992. Likewise, the nurse defendants were properly dismissed pursuant to Miss. Code Ann. § 11-46-7(2). The lower court's reliance on the Sovereign Immunity Act amounts to harmless error in light of the result reached. Accordingly, we affirm the judgment of the lower court.

¶26. **AFFIRMED.**

**PRATHER, C.J., BANKS, SMITH AND WALLER, JJ., CONCUR. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN AND PITTMAN, P.JJ.**

**McRAE, JUSTICE, DISSENTING:**

¶27. The dispute in this case is not between Danny Jones and Lowndes County, rather it is between the private successor corporation, Baptist Memorial Hospital, and Lowndes County. This is no different than any other situation when one corporation buys the assets of another; it also assumes its debts and liabilities. Simply put, the question is not one of tail insurance as it would apply to Jones when he made his claim, but which defendant ultimately is liable. Having assumed all liabilities of the Golden Triangle Regional Medical Center, the dispute over insurance coverage properly is between Baptist and the County. Accordingly, I dissent.

¶28. In its analysis of Issue IV regarding tail insurance, the majority dismisses Baptist Memorial Hospital declaring that Baptist "was not obligated to purchase 'tail insurance' for the benefit of Golden Triangle." Whether or not Baptist was obligated to purchase such tail insurance is not and should not be the issue.

Baptist, as Baptist Memorial Hospital-Golden Triangle, Inc., leased the Golden Triangle Regional Medical Center hospital facilities from Lowndes County. Baptist was named in the first suit. No. 98-CA-00510-SCT. Lowndes County, in its Motion to Dismiss, even acknowledges that its fellow defendant, Baptist, is successor to GTRMC. Further, in *Russell v. Sunamerica Securities, Inc.*, 962 F.2d 1169 (5th Cir. 1992), a case emanating from the Southern District of Mississippi, the Fifth Circuit stated there are four situations in which liability is acquired, including those situations in which "the successor may be considered a 'mere continuation' of the predecessor." *Id.* at 1175. A mere continuation is evident because factors such as continuity of employees, use of the same facilities and continuity of assets all are present. Baptist succeeds to the assets and liabilities of Golden Triangle.

¶29. Given Baptist's status as a private entity, it may be sued. The issue of which defendant finally is liable for damages is one for Lowndes County and Baptist to determine between themselves. While the lease between GTRMC and Baptist states that claims arising prior to the lease are the responsibility of the lessor, such is inapposite because Baptist has acquired the liabilities of the lessor. Baptist is liable for damages in this case. Should Baptist wish to reduce its financial liability, it should seek indemnification from Lowndes County.

**SULLIVAN AND PITTMAN, P.JJ., JOIN THIS OPINION.**

1. The two complaints were consolidated pursuant to a May 4, 1995 motion.

2. Although the trial court apparently relied upon the employee protection set forth in § 11-46-7(2) of the Sovereign Immunity Act (effective April 1, 1993), an identical provision was in effect at the time the cause of action accrued in the instant case. Therefore, the nurse defendants were properly dismissed according to Miss. Code Ann. § 11-46-7(2)(1991).

3. Although Sparks filed suit on November 18, 1993, after passage of the Act, the provisions of the Sovereign Immunity Act (11-46-1 et seq.) did not apply because the cause of action accrued in November, 1991, before passage of the Act.

4. See 42 Am. Jur. 2d Insurance § 2 (1982).