LEE, P.J.,
for the Court:
¶ 1. This case involves the sale of a gravel business during the pendency of a divorce proceeding and the subsequent distribution of the sale proceeds to satisfy a debt. We must determine whether the distribution of the sale proceeds was appropriate under the circumstances.
FACTS AND PROCEDURAL HISTORY
¶ 2. Roger A. Carroll and Anna F. Carroll were married in 1983. Roger’s parents, William and Verna Mae Carroll, owned Mississippi Gravel Sales, Inc. (MGS) and Carroll’s Gravel. On January 15, 1999, Roger and his parents signed an “Agreement for Sale and Transfer of Assets,” under which Roger would purchase MGS for $450,000. The terms of the contract provided that Roger would pay $150,000 at the time of closing and pay the remaining $300,000 in monthly installments over ten years at the rate of seven percent per year. As part of the purchase price, Roger obtained ownership of MGS’s equipment. Roger was the president and sole shareholder of MGS.
¶ 3. In September 2003, Anna filed a complaint for divorce in the Monroe County Chancery Court against Roger. While the divorce case was still pending, Roger sold MGS for $500,000 to Mississippi Gravel Sales, LLC [1] in November 2004. From the sale proceeds, Roger paid several creditors as well as $191,772.29 to Verna Mae.[2] The money paid to Verna Mae included $153,274.65, which was the amount Roger still owed her under the purchase agreement, and $38,497.64 for certain equipment. While operating MGS, Roger had used certain equipment belonging to Verna Mae.[3] Roger included this equipment in the sale of MGS to Mississippi Gravel Sales, LLC.
¶ 4. In the judgment of divorce, the chancellor divided the marital assets and ordered Roger to pay Anna certain sums including alimony in the amount of $4,000 per month. In regard to MGS, the chancellor stated that if the sale of MGS was ever set aside, Anna would be entitled to one-half of the net proceeds from the sale of MGS’s assets. Roger appealed, and we reversed and remanded in part for the chancellor to determine whether Roger complied with dividing the marital estate and to make an on-the-record determination as to whether the award of periodic alimony was justified. Carroll v. Carroll, 976 So.2d 880, 889 (¶22) (Miss.Ct.App. 2007).
¶ 5. On January 27, 2005,, Anna filed a complaint in the Monroe County Chancery Court against Roger, Verna Mae, Cynthia *335 Ann Carroll Loden, Tim Parker, MGS, and Mississippi Gravel Sales, LLC. The complaint asserted several claims relating to the sale of MGS to Mississippi Gravel Sales, LLC, as well as a purported fraudulent conveyance.[4] Loden, Parker, and Mississippi Gravel Sales, LLC, were subsequently dismissed.
¶ 6. Following a trial on the matter, the chancellor found that Roger’s payment of $153,274.65 to Verna Mae was fraudulent and ordered Verna Mae to pay that amount into the registry of the chancery court for equitable distribution in Anna and Roger’s divorce proceeding. The chancellor found that the transfer of $38,497.64 to Verna Mae was not fraudulent.
¶ 7. Verna Mae now appeals, asserting the following issues: (1) the chancellor erred in applying the Uniform Fraudulent Transfer Act (UFTA); (2) the chancellor erred in setting aside the transfer of $153,274.65 to Verna Mae; and (3) the chancellor failed to dismiss Anna’s complaint pursuant to the doctrine of judicial estoppel. Finding that the chancellor erred in setting aside the payment to Verna Mae, we reverse and render.
¶ 8. Anna also filed a cross-appeal, asserting that the chancellor erred in finding that there was no presumption of fraud in connection with the payment of $38,497.64 to Verna Mae.
DISCUSSION
I. UFTA
¶ 9. In her first issue on appeal, Verna Mae argues that the chancellor improperly applied the UFTA. See Miss.Code Ann. § 15-3-101 to -121 (Rev.2003). The UFTA repealed the former Mississippi Code Annotated section 15-3-3 and became effective from and after July 1, 2006. The Mississippi Supreme Court has stated that “[i]f the statutory language mandates that the statute is to apply from and after passage, it is not to be applied retroactively to causes of action which accrued prior to passage of the statute.” Jones v. Baptist Mem’l Hosp.-Golden Triangle, Inc., 735 So.2d 993, 998 (¶ 11) (Miss.1999).
¶ 10. In his judgment, the chancellor stated the following:
Pursuant to the provisions of § 15-3-107 ... and also pursuant to the predecessor fraudulent conveyance statute, § 15-3-3, ... the court determines that there is a presumption of fraud as to the payment of the aforesaid sum of $153,274.56 to Defendant Verna Mae P. Carroll, which presumption has not been rebutted by the Defendants by clear and convincing evidence.
In his bench ruling, the chancellor noted that section 15-3-3 had been repealed and then conducted an analysis of the issues following several factors as listed in section 15-3-107.
¶ 11. According to section 15-3-3, a conveyance is fraudulent if it results from fraud or with the “intent or purpose to delay, hinder, or defraud creditors.... ” This section also deems fraudulent a transfer made for consideration not “deemed valuable in law” and a fraudulent loan of goods and chattels. Miss.Code Ann. § 15-3-3. “When examining a conveyance to determine if it is fraudulent, a court searches for certain ‘badges of fraud,’ or suspicious circumstances, which usually accompany a fraudulent conveyance.” Se. Bank of Broward, Fla., N.A. v. I.P. Sarullo Enter., Inc., 555 So.2d 704, 707 (Miss. *336 1989) (quoting Reed v. Laveccehia, 187 Miss. 413, 198 So. 439 (1940)). These “badges of fraud” can include the following:
Inadequacy of consideration, transaction not in usual course or mode of doing business, absolute conveyance as security, secrecy, insolvency of grantor, transfer of all his property, attempt to give evidence of fairness, retention of possession, failure to take a list of the property covered by the conveyance, relationship of the parties, and transfer to person having no apparent use for the property.
A & L, Inc. v. Grantham, 747 So.2d 832, 843 (¶ 48) (Miss.1999). In addition, transfer in anticipation of litigation and amount of control over property by debtor after transfer are considered badges. Se. Bank of Broward, 555 So.2d at 708.
¶ 12. According to Mississippi Code Annotated section 15-3-107(1) (Supp.2009), a conveyance is fraudulent if the debtor “made the transfer or incurred the obligation with actual intent to hinder, delay or defraud any creditor of the debtor.” This section then lists fourteen factors that may be given consideration in determining actual intent. Most of these factors are similar to those considered “badges of fraud.” Since most of the factors from section 15-3-107 that the chancellor relied upon to make his decision are similar to those listed as “badges of fraud,” we can determine from the record whether the chancellor abused his discretion in finding that the transfer was fraudulent.
II. TRANSFER OF $153,274.65 TO VERNA MAE
¶ 13. Verna Mae next argues that the chancellor erred in setting aside the transfer as fraudulent since the transferred sum was legitimately owed to her. The chancellor found that there was a presumption of fraud as to the payment made to Verna Mae and that presumption was not rebutted by clear-and-convincing evidence.
¶ 14. The Mississippi Supreme Court has stated that in cases such as this, “there must be clear and convincing proof of the existence of a valid debt, including disclosure of details as to the items and amount of the debt, and it must clearly appear that the conveyance was in fact made in consideration of such debt.” Barbee v. Pigott, 507 So.2d 77, 85 (Miss.1987). The court further stated that “[a] debtor does have the right to prefer one creditor over another.... ”Id.
¶ 15. There is no evidence in the record that Roger intended to defraud Anna-a fact which Anna admitted at trial. Documentation in the record to support Verna Mae’s contention that the debt was legitimate includes the contract for sale, an affidavit signed by Verna Mae, numerous bank statements, and an amortization schedule which shows as of the sixty-ninth payment Roger would owe Verna Mae $153, 274.65. Furthermore, the transaction was well documented; Anna was notified of the transaction; Roger did not retain any interest in the funds after transfer; and Verna Mae used the funds after the transfer from Roger. There was clear-and-convincing evidence that the transfer of funds to Verna Mae by Roger to pay an outstanding debt was legitimate. The chancellor erred in finding otherwise; therefore, we reverse and render. Verna Mae is entitled to receive $153,274.65.
III. JUDICIAL ESTOPPEL
¶ 16. In her final issue on appeal, Verna Mae argues that Anna’s claims should have been dismissed pursuant to judicial estoppel. Prior to trial in the chancery court, Anna filed a claim in the Monroe County Circuit Court alleging that *337 the chancery matter had been settled and that Verna Mae and Roger had tortiously breached the settlement agreement. However, this matter was later dismissed. The doctrine of judicial estoppel is applied to prevent a party from achieving an unfair advantage by taking inconsistent positions in litigation. Kirk v. Pope, 973 So.2d 981, 991 (¶¶ 31-32) (Miss.2007). There are three requirements: “(1) the party is judicially estopped only if its position is clearly inconsistent with the previous one; (2) the court must have accepted the previous position; and (3) the non-disclosure must not have been inadvertent.” Id. (citation omitted).
¶ 17. In this case, it is clear that Anna’s position is not inconsistent with her'previous position. Anna thought a settlement had been reached and filed suit to enforce it. The record is unclear as to whether a settlement agreement had been reached, but Verna Mae does not admit that a settlement had been reached. The chancellor did, however, accept Anna’s previous position as he found the conveyance to be fraudulent. In regard to the third requirement, non-disclosure is inapplicable as Verna Mae filed a motion to dismiss on the ground of judicial estoppel. We find that the doctrine of judicial estoppel is inapplicable in this case. This issue is without merit.

Cross-appeal

¶ 18. On cross-appeal, Anna argues that the transfer of $38,497.64 to Verna Mae was fraudulent. This amount represented the value of certain equipment that Verna Mae testified she owned. According to Verna Mae, she continued to own this equipment even though Roger began to use it when he bought MGS. When Roger sold MGS, he included this equipment in the sale price. Roger testified that $38,497.64 was a fair value for the equipment. This amount is listed as a lien payable to Verna Mae on the settlement statement. Attached to the settlement statement is an affidavit by Verna Mae that states the specific equipment involved and its value at $38,497.64.
¶ 19. The chancellor found that this particular transfer to Verna Mae was not fraudulent, and we agree. This issue is without merit.
¶ 20. THE JUDGMENT OF THE MONROE COUNTY CHANCERY COURT IS REVERSED AND RENDERED ON DIRECT APPEAL AND AFFIRMED ON CROSS-APPEAL. ALL COSTS OF THIS APPEAL ARE ASSESSED ONE-HALF TO THE APPELLANT/CROSS-APPELLEE AND ONE-HALF TO THE APPEL-LEE/CROSS-APPELLANT.
KING, C.J., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ„ CONCUR. MYERS, P.J., NOT PARTICIPATING.

. Roger had no ownership interest in or connection with Mississippi Gravel Sales, LLC.

. William died the previous year on May 29, 2003.

.This equipment had belonged to Carroll’s Gravel, not MGS.

. The claim relating to the fraudulent conveyance was resolved in favor of Verna Mae and is not contested on appeal.