958 So.2d 1240 (2007)
Joseph Erich WILLING, Jr., and Jeanette Willing, Individually, and as Parent and Natural Guardian of the Minors Joseph Brandon Willing and Chadwick Mitchell Willing, and as Administratrix of the Estate of Joseph Erich Willing, Sr., Deceased, Appellants,
v.
ESTATE OF Richard BENZ, Jr., Deceased, Wendy P. Benz, Executrix and the City of Greenwood, Mississippi, Appellees.
No. 2005-CA-00470-COA.
Court of Appeals of Mississippi.
March 27, 2007.
*1243 Thomas Henry Freeland, attorney for appellants.
Richard Benz, Jr., Arnold F. Gwin, Greenwood, Wilton V. Byars, Terry Dwayne Little, Oxford, attorneys for appellees.
EN BANC.

MODIFIED OPINION ON MOTION FOR REHEARING
BARNES, J., for the Court.
¶ 1. The appellants' motion for rehearing is denied, and the previous opinion of this Court is withdrawn, and this opinion is substituted in lieu thereof. This wrongful death action brought under the Mississippi Tort Claims Act ("MTCA") arose from circumstances surrounding the death of Joseph Erich Willing, Sr. near the intersection of U.S. Highway 49 and U.S. Highway 82 in Greenwood, Mississippi on January 8, 2002. The Willings appeal to this Court from the Leflore County Circuit Court's grant of summary judgment in favor of the City of Greenwood as well as from the court's award of attorney's fees to Richard Benz, Jr. Finding error only in the trial court's award of attorney's fees, we affirm in part and reverse and remand in part.

SUMMARY OF FACTS AND PROCEDURAL HISTORY
¶ 2. At approximately 6:18 a.m. on the morning of January 8, 2002, Officer Scott Beck of the Greenwood Police Department responded to a single vehicle accident near the intersection of U.S. Highway 49 and U.S. Highway 82 in Greenwood, Mississippi. The driver of the vehicle informed Officer Beck that she was traveling in the eastbound lane of Highway 82 when she hit what appeared to be a patch of ice that caused her vehicle to slide across the median into the westbound lane of Highway 82. At approximately 6:35 a.m., Officer Beck radioed the police dispatcher and reported the three to four foot patch of ice on the road so that the Mississippi Department of Transportation ("MDOT") could be notified to address the condition with sand or salt. Officer Beck then completed his accident report and left the scene. A few minutes after receiving the report from Officer Beck, the police dispatcher notified MDOT of the ice on the highway.
¶ 3. At approximately 7:13 a.m. on the same morning, Officer Beck was again dispatched to the intersection of Highway 49 and Highway 82 in reference to another accident. Sharon Simpson, the driver of the vehicle involved in this accident, stated that she was traveling approximately seventy *1244 miles per hour[1] east on Highway 82 when she drove over a patch of ice and slid across the median, hitting and killing Joseph Erich Willing, Sr. ("Willing, Sr."), who was in the process of repairing a construction sign damaged in the first accident. The patch of ice involved in this accident was apparently the same patch of ice involved in the earlier accident. MDOT arrived to address the patch of ice a few minutes before Officer Beck left the scene of this second accident.
¶ 4. By the end of the day, Joseph Erich Willing, Jr. ("Joseph") had filed a complaint in the Circuit Court of Leflore County, Mississippi as a wrongful death beneficiary of Willing, Sr. Joseph contemporaneously petitioned the Chancery Court of Leflore County for letters of administration in the estate of Willing, Sr. The chancery court granted this petition and also approved the contingent fee contract between Joseph and his attorney Richard Benz, Jr.[2] Subsequently, Jeanette Willing, widow of Willing, Sr. and guardian of their two minor children, filed a motion through separate counsel in the Leflore County Chancery Court to set aside the order granting letters of administration and approving the contingent fee contract between Joseph[3] and Benz. Acknowledging that Grenada County was the proper venue for administration of Willing, Sr.'s estate and that Jeanette Willing should have been given preference to administer the estate, the Leflore County Chancery Court granted Jeanette's motion and entered an order to that effect on April 5, 2002.[4] The contract for employment between Joseph and Benz, insofar as it may have related to any activity on behalf of Jeanette Willing or the two minor children, was ordered "set aside, canceled and held for naught" by the chancellor.
¶ 5. On July 2, 2002, Sharon Simpson filed an interpleader counterclaim asking that $100,000, the policy limits of her automobile liability insurance, be interpled into the registry of the circuit court in which the wrongful death action was pending. An agreed order was entered by the circuit court granting Simpson's interpleader request and ordering all plaintiffs to release Simpson from further liability. The circuit court then entered an order disbursing the proceeds of the settlement funds, finding that Benz was entitled to one-third of the proceeds pursuant to the contingency fee contract signed by Joseph on behalf of the wrongful death beneficiaries of Willing, Sr.
¶ 6. Jeanette Willing, acting through separate counsel, was allowed to intervene in the wrongful death action, and her counsel immediately moved the Leflore County Circuit Court to reconsider the disbursement order, citing the fact that the Leflore *1245 County Chancery Court had revoked the letters of administration it had granted to Joseph and had invalidated the contract for employment between Benz and Joseph as it may have related to activity on behalf of Jeanette Willing or her two minor children. This motion was denied by the circuit court on January 15, 2003.
¶ 7. Having received contingency fees from the Simpson settlement proceeds and at the written request of Joseph, Benz filed a motion to withdraw as counsel for Joseph, and this motion was granted by order of the circuit court on June 26, 2003. Pursuing their claims now by joint representation, the Willings' complaint was amended to add the City of Greenwood as a defendant. The amended complaint alleged negligence on the part of the city in failing to warn of the icy condition on the highway. The city moved for summary judgment asserting that it was immune from liability by virtue of the MTCA. More specifically, the city cited immunities found at sections 11-46-9(1)(c), (d), (q), and (v) as precluding liability for the city's acts or omissions regarding the death of Willing, Sr. The circuit court granted the city's motion for summary judgment, dismissing the case with prejudice; however, the circuit court found that immunity existed under subsections (c), (d), and (q) only.
¶ 8. Aggrieved, the Willings appeal to this Court urging that there are genuine issues of material fact as to whether the city was entitled to immunity under any provision of the MTCA and that therefore the grant of summary judgment in favor of the city was error. Additionally, the Willings appeal the circuit court's grant of a one-third contingency fee to attorney Benz from the interpled settlement proceeds. The Willings assert that Benz is entitled to contractual fees only with respect to his representation of Joseph and that he is entitled to fees based on quantum meruit with respect to work that may have benefitted Jeanette Willing, the estate of Joseph Erich Willing, Sr., and Jeanette Willing's two minor children. We find that there is no genuine issue as to whether the immunities found in subsections (c) and (q) are applicable to the Willings' claims against the City of Greenwood and therefore affirm the circuit court's grant of summary judgment. As to the award of contingent fees to attorney Benz out of proceeds attributable to beneficiaries other than Joseph, we reverse and remand the case with instructions that the circuit court use quantum meruit to determine the amount of fees owed to Estate of Richard Benz, Jr.

STANDARD OF REVIEW
¶ 9. When reviewing a trial court's grant of summary judgment, this Court applies a de novo standard of review. Busby v. Mazzeo, 929 So.2d 369, 372(¶ 8) (Miss.Ct. App.2006). Rule 56(c) of the Mississippi Rules of Civil Procedure provides that summary judgment is proper where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." When considering a motion for summary judgment, the deciding court must view all evidence in a light most favorable to the non-moving party. Mazzeo, 929 So.2d at 372(¶ 8). Only when the moving party has met its burden by demonstrating that there are no genuine issues of material fact should summary judgment be granted. Tucker v. Hinds County, 558 So.2d 869, 872 (Miss. 1990). As applied to the case sub judice, this Court must determine whether the City of Greenville adequately demonstrated that there are no triable issues with regard to whether the city is immune from liability under the MTCA. See Mazzeo, 929 *1246 So.2d at 372(¶ 8) (citing Lyle v. Mladinich, 584 So.2d 397, 398 (Miss.1991)).
¶ 10. The circuit court's decision to award contingent fees to attorney Benz will not be disturbed unless the trial judge's decision was manifestly wrong, clearly erroneous, or an improper legal standard was applied. See Pannell v. Guess, 671 So.2d 1310, 1313 (Miss.1996) (citing Hill v. Southeastern Floor Covering Co., 596 So.2d 874, 877 (Miss.1992)). "For questions of law, our standard of review is de novo." In re Estate of Brewer, 755 So.2d 1108, 1111(¶ 10) (Miss.Ct.App.1999) (citing Smith v. Dorsey, 599 So.2d 529, 533 (Miss.1992)). We conclude that the errors urged by the Willings as to the award of contingency fees involve questions of law regarding application of Mississippi's wrongful death statute. Therefore, we will analyze de novo the legal standard applied by the circuit court.

ISSUES AND ANALYSIS
¶ 11. The Willings' appeal raises two factually and legally distinct issues. We will therefore address each issue separately.
I. WHETHER THE TRIAL COURT ERRED BY GRANTING SUMMARY JUDGMENT BASED ON IMMUNITIES AFFORDED THE CITY OF GREENWOOD UNDER THE MISSISSIPPI TORT CLAIMS ACT
¶ 12. The trial court held that the City of Greenwood was immune from liability by virtue of three immunity provisions found in the MTCA. The sections found applicable by the trial court provide that:
A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:
. . . .
(c) Arising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or fire protection unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury;
(d) Based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused;
. . . .
(q) Arising out of an injury caused solely by the effect of weather conditions on the use of streets and highways. . . .
Miss.Code Ann. § 11-46-9(1)(c), (d), and (q) (Rev.2002).
¶ 13. The Willings argue that (1) a genuine fact issue exists as to whether Officer Beck's conduct with respect to the icy condition on the highway amounts to a "reckless disregard [for] the safety" of the traveling public within the meaning of subsection (c); (2) the trial court improperly held that the city's duty to warn in this case was discretionary as contemplated by subsection (d); and (3) a genuine fact issue exists as to whether the accident in question was caused solely by the effect of weather conditions, precluding summary judgment pursuant to subsection (q).
¶ 14. We note at the outset that counsel for the Willings alluded in the appellants' brief and more directly during oral arguments that liability or immunity therefrom should be analyzed separately with respect to the city's acts or omissions through Officer Beck and the city's acts or omissions by persons who may have been put on notice of the icy conditions by Officer Beck. We find this contention without merit as the only acts or omissions that may *1247 be attributed to the City of Greenwood were those of Officer Beck and those of dispatcher Lee Taylor who is also a Greenwood city police officer. There is no evidence in the record that any other city employee had knowledge of the icy condition nor do the Willings identify any other city employee who had a duty to act under the circumstances. Accordingly, we find that all acts or omissions properly attributable to the City of Greenwood were performed by employees engaged in activities relating to police protection.
A. WHETHER OFFICER BECK'S CONDUCT AMOUNTED TO RECKLESS DISREGARD FOR THE SAFETY OF THE TRAVELING PUBLIC
¶ 15. The Willings appeal the circuit court's grant of summary judgment pursuant to section 11-46-9(1)(c) of the MTCA. This section affords immunity for acts or omissions of police officers while performing police-related activities unless the police officer "acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury." Miss.Code Ann. § 11-46-9(1)(c) (Rev.2002). The facts in this case are not disputed. The characterization of these facts, however, is at issue. The Willings contend that Officer Beck's failure to take additional steps between the occurrence of the two accidents, separated by approximately forty-five minutes, to warn the traveling public amounts to reckless disregard for the traveling public's safety or at the very least creates a triable issue. We disagree.
¶ 16. Reckless disregard is a higher standard than gross negligence. Miss. Dep't. of Pub. Safety v. Durn, 861 So.2d 990, 994(¶ 10) (Miss.2003). This standard "embraces willful or wanton conduct which requires knowingly and intentionally doing a thing or wrongful act." Id. at 995(¶ 10) (quoting City of Jackson v. Lipsey, 834 So.2d 687, 691-92(¶ 16) (Miss. 2003)). "Reckless disregard usually is accompanied by a conscious indifference to consequences, amounting almost to a willingness that harm should follow." Id. (quoting Maye v. Pearl River County, 758 So.2d 391, 394(¶ 16) (Miss.1999)). Reckless disregard has consistently been found where the conduct at issue demonstrated that the actor appreciated the unreasonable risk at stake and deliberately disregarded "that risk and the high probability of harm involved." Id. at 995(¶ 13) (quoting Maldonado v. Kelly, 768 So.2d 906, 910-11(¶ 11) (Miss.2000)). "The plaintiff has the burden of proving `reckless disregard' by a preponderance of the evidence." Titus v. Williams, 844 So.2d 459, 468(¶ 37) (Miss.2003) (citing Simpson v. City of Pickens, 761 So.2d 855, 859 (Miss.2000)).
¶ 17. Under the standard discussed above, in order to find that Officer Beck's conduct amounted to reckless disregard, the Willings must show facts from which a trier of fact could conclude that: (1) the patch of ice created an unreasonable risk; (2) this risk included a high probability of harm; (3) Officer Beck appreciated the unreasonable risk; and, (4) Officer Beck deliberately disregarded that risk, evincing "almost a willingness that harm should follow." See Durn, 861 So.2d at 995(¶ 10).
¶ 18. There is no evidence in the record that would indicate the probability of additional accidents. Although the mere fact that the first accident occurredand a condition which contributed to that accident remained on the highwaymay indicate that additional accidents were possible, we decline to address whether this possibility would be sufficient to create a genuine issue with respect to the first three factors specified in the preceding paragraph. Instead, we find that the Willings failed to provide sufficient proof that *1248 Officer Beck deliberately disregarded the risk posed by the icy condition, as required by the fourth factor enumerated above. Absent a showing that Officer Beck deliberately disregarded the risk posed by the patch of ice, there is no genuine issue as to whether Officer Beck's conduct amounted to reckless disregard. We turn now to a discussion of this issue.
¶ 19. The city cites Durn for the proposition that reckless disregard amounts "almost to a willingness that harm should follow" from an act or omission. Durn, 861 So.2d at 995(¶ 10) (citation omitted). The Willings counter this argument with Turner v. City of Ruleville, 735 So.2d 226 (Miss.1999), a case in which it was alleged that an officer failed to arrest a motorist whom he knew to be intoxicated. Id. at 227(¶ 2). In Turner, the court held that a plaintiff need not specifically plead that the actor intended the harm that follows, only that he "knowingly and intentionally do[] a thing or wrongful act." Id. at 230(¶ 18). The Willings then analogize that since Officer Beck intended to leave the scene after the first accident, it was error for the circuit court to summarily grant immunity under section 11-46-9(1)(c). We find this argument to be without merit.
¶ 20. The Willings misconstrue the procedural posture of Turner. It was not held in Turner that the officer's conduct amounted to reckless disregard or even that sufficient evidence existed which would preclude summary judgment on this issue. The Turner court merely held that "the facts pled do allege that [the officer] wrongfully and intentionally allowed a visibly intoxicated Smith to continue driving. By this alleged act, the officer allegedly showed a reckless or wanton or willful disregard for the safety of other drivers on the road, including Turner." Id. at 230(¶ 20). It was the legal sufficiency of the plaintiff's pleadings at issue in Turner, not the factual sufficiency as is before this Court. The court's holding in Turner did nothing to disturb the requirement that a plaintiff prove wantonness, which "is a failure or refusal to exercise any care, while negligence is a failure to exercise due care." Maldonado, 768 So.2d at 912(¶ 8) (citations omitted). The holding in Turner is also in harmony with the holding in Durn, as Turner requires that an intentional act be pled, while Durn requires that the intentional act evince almost a willingness that harm should result from that act.
¶ 21. The Willings concede that Officer Beck notified his dispatcher of the condition of the highway and that the dispatcher promptly notified the MDOT so that sand and/or salt could be applied to the patch of ice. Yet, the Willings insist that Officer Beck "did nothing to prevent the second accident in which [Willing, Sr.] was killed." This contention, however, is inaccurate. To say that the second accident was not prevented is not to say that no effort was made to prevent it. It is undisputed that Officer Beck notified his dispatcher with the intent that the condition be addressed by the MDOT. It is similarly without question that the dispatcher promptly notified the MDOT of the patch of ice. Unfortunately, the MDOT did not arrive on the scene until shortly after the fatal accident involving Willing, Sr. The fact that the second accident was not prevented does not change the fact that an effort was made to that end. In light of these undisputed facts, we certainly cannot agree with the Willings' contention on this point. Reasonable minds could not conclude, based on the evidence presented, that Officer Beck's conduct rose to the level of wantonness, which, as mentioned above, "is a failure or refusal to exercise any care, while negligence is a failure to exercise due care." Maldonado, 768 So.2d at *1249 912(¶ 8) (citations omitted) (emphasis added).
¶ 22. The Willings cite several cases which have found reckless disregard by the conduct of police officers in pursuit of fleeing suspects. The factors considered by these courts in reaching their decisions include the length of the chase, type of neighborhood, characteristics of the streets, the presence of vehicular or pedestrian traffic, weather conditions and visibility, and the seriousness of the offense for which the police are pursuing the vehicle. Durn, 861 So.2d at 995(¶ 13) (citing City of Jackson v. Brister, 838 So.2d 274 (Miss. 2003)). The first five of these factors involve risk assessment of the pursuit while the final factor requires a balancing of the potential benefit of getting a suspect off of the streets versus the risk involved in light of the previous factors, i.e., a determination of which was the lesser of two evils. We have outlined the risk assessment factors applicable to the case sub judice which are analogous to those factors mentioned above. Our case, however, is not as susceptible to the "either/or" assessment present in the police pursuit scenario. Nonetheless, we do recognize that this case involves potential alternative choices, just as the court in Brister noted that the officers could have blocked the suspect's car in the parking lot prior to giving chase but failed to do so. Brister, 838 So.2d at 280(¶ 21).
¶ 23. The Willings do not specify any particular alternative course of conduct that Officer Beck should have taken, only generally that he should have performed his duty to warn. The Willings admit, as discussed infra, that Officer Beck's duty to warn did not include a duty to erect warning signs. We can speculate as to the feasibility and effectiveness of several alternatives, but there is no evidence in the record to support these speculations. In contrast, we can say with virtual certainty that had the officer in Turner taken the intoxicated motorist into custody, the accident in that case would not have occurred. Similarly, in Brister and other police pursuit cases, we can say that had the officers not engaged in pursuit of the suspects, or had disengaged the pursuit, the accidents would not have occurred. We cannot, nor can the Willings, assert similar certainty about Officer Beck's alleged failure to act as the Willings do not produce any specific alternative choices that Officer Beck should have taken, much less the potential benefits versus risks that an alternative would have produced. The questions left in our minds by the absence of such evidence in the record include: (1) whether Officer Beck should have remained on the side of the highway with his blue lights on (if this were done, we are not convinced that motorists would necessarily have known that there was a patch of ice on the road); (2) whether Officer Beck should have blocked off or barricaded this part of the highway (this alternative was not suggested by the Willings, and the record does not reflect the feasibility of this alternative, the effect on traffic, the potential harm versus benefit, or even whether Officer Beck or the city had authority to pursue this alternative).
¶ 24. In light of the foregoing discussion, we are not convinced that sufficient evidence exists in the record to support a finding that Officer Beck was even negligent. We certainly do not find that sufficient evidence exists from which a trier of fact could conclude that Officer Beck or the city failed or refused to exercise any care or that his actions evinced "almost a willingness that harm should follow." It follows that Officer Beck's conduct did not rise to the level of reckless disregard. Thus, we find the circuit court's grant of summary judgment as to the conduct of Officer Beck appropriate.
*1250 B. WHETHER THE CITY'S DUTY TO WARN WAS DISCRETIONARY WITHIN THE MEANING OF SECTION 11-46-9(1)(d)
¶ 25. The city originally relied only on sections 11-46-9(1)(c), (q), and (v) as the bases for its summary judgment motion. However, the city filed a supplemental motion for summary judgment, asserting that the city was immune pursuant to the "discretionary function or duty" immunity found in subsection (d). Relying on Collins v. Tallahatchie County, 876 So.2d 284 (Miss.2004), an opinion handed down after submission of the city's original motion for summary judgment, the city asserted that Officer Beck's conduct with respect to the icy condition was discretionary and that the "ordinary care" standard held applicable to discretionary duties in prior case law was no longer applicable pursuant to the supreme court's holding in Collins. We agree with the city that Collins abrogated the duty to exercise ordinary care in carrying out a "discretionary function or duty." Accordingly, in determining whether an act or omission falls within the immunity granted by section 11-46-9(1)(d), the relevant inquiry begins and ends with the determination of whether the conduct complained of was discretionary.
¶ 26. In order to make the determination of whether governmental conduct is discretionary, this Court employs the public policy function test as adopted by the Mississippi Supreme Court in Jones v. Miss. Dep't of Transp., 744 So.2d 256, 260(¶ 11) (Miss.1999) (citing United States v. Gaubert, 499 U.S. 315, 322, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991)). The public policy function test properly acknowledges the purpose of the discretionary function exception, which is "to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." Id. at (¶ 10) (citing Gaubert, 499 U.S. at 323, 111 S.Ct. 1267). To determine whether an act is a "discretionary function or duty" under this test, "it must first be determined whether the activity involved `an element of choice or judgment.'" Id. (quoting Gollehon Farming v. United States, 17 F.Supp.2d 1145, 1154 (D.Mont.1998)). If the activity in question does involve an element of choice or judgment, then it must be determined "whether the choice involved social, economic or political policy." Id.; see also Stewart v. City of Jackson, 804 So.2d 1041, 1047(¶ 11) (Miss.2002); Dotts v. Pat Harrison Waterway Dist., 933 So.2d 322, 326(¶ 9) (Miss.Ct.App.2006).
¶ 27. While we agree with the trial court that the conduct of Officer Beck involved the exercise of choice or judgment, we find that the trial court failed to consider the second prong of the public policy function test, which requires that the choice involve "social, economic, or political policy." Accordingly, we cannot, at this time, affirm the judgment of the trial court as to the applicability of section 11-46-9(1)(d).
1. Whether the activity involved an element of choice or judgment
¶ 28. The Willings contend that the city's duty to warn of the icy condition on the highway was not discretionary and that Officer Beck and the city breached this duty by not taking additional steps to warn the traveling public of this condition. An act is ministerial and not discretionary "(if) the duty is one which has been positively imposed by law and its performance required at a time and in a manner or under conditions which are specifically designated, the duty to perform under the conditions specified not being dependent upon the officer's judgment or discretion." *1251 Stewart, 804 So.2d at 1048(¶ 15) (quoting L.W. v. McComb Separate Mun. Sch. Dist., 754 So.2d 1136, 1141 (Miss.1999)).
¶ 29. Although the Willings are correct in that the city generally has a duty to warn of dangerous conditions of which it has knowledge, the precise time, manner, and conditions upon which this duty could be carried out involve an element of choice or judgment.[5]See Jones, 744 So.2d at 263(¶ 22) (stating that "[e]ven prior to the enactment of § 11-46-9(1)(w), a governmental entity had a duty to warn of a dangerous condition of which it has notice"). Officer Beck was expected to use his judgment on a daily basis with regard to situations such as this. The Willings cite no authority that prescribes the exact conduct expected of Officer Beck or the city under the circumstances encountered by the officer on the morning of January 8, 2002. In fact, the Willings do not even identify what conduct was expected of Officer Beck.
¶ 30. Recognizing that the placement of road signs has been found to be a discretionary duty, the Willings represent that "the placement of warning signs was in no way involved in this case." Citing Jones, Leflore County v. Givens, 754 So.2d 1223 (Miss.2000), and Mississippi Department of Transportation v. Cargile, 847 So.2d 258 (Miss.2003) for support, the Willings argue that the duty to warn is a separate and distinct duty that must be observed using ordinary care. We find this argument to be without merit. These cases cited by the Willings held that, while the duties at issue were discretionary within the meaning of the MTCA, the governmental actors nonetheless had a duty to exercise ordinary care in carrying out these duties.[6] *1252 The Mississippi Supreme Court has since held that the discretionary function immunity abrogates the duty to exercise ordinary care when performing or failing to perform a discretionary function, "whether or not that discretion be abused." Collins, 876 So.2d at 289(¶ 17). The Collins court held that: "When an official is required to use his own judgment or discretion in performing a duty, that duty is discretionary. . . . The ordinary care standard is not applicable to Miss.Code Ann. § 11-46-9(1)(d)." Id. at 289(¶ 17) (internal citations omitted). Accordingly, if Officer Beck's duty is deemed discretionary within the meaning of section 11-46-9(1)(d), which must be determined by application of the public policy function test, the ordinary care standard is inapplicable.
¶ 31. As previously discussed, a duty does not involve an element of choice or judgment, i.e., is ministerial and not discretionary, if the duty at issue is imposed by law and the time, manner, and conditions for carrying out that duty are specified, leaving no room for discretion. Stewart, 804 So.2d at 1048(¶ 15). In Jones, the court addressed the appellant's contention that Mississippi Code Annotated sections 63-3-303 and 63-3-305 mandated the placement of traffic control devices and that therefore the duty to place warning signs on the road was not discretionary. Jones, 744 So.2d at 259(¶ 6). The court held that language found "in the subsections indicate that the responsible entity has to make a judgment as to where or whether to place traffic control devices on the road."[7]Id. at 262(¶ 18). Just as MDOT and Tunica County in Jones had discretion in carrying out its statutory duty to place road signs, the city had discretion in carrying out any common law duty to warn of or make safe the icy conditions on the highway of which it had notice.
¶ 32. In Mosby v. Moore, 716 So.2d 551 (Miss.1998), a police officer involved in an accident while pursuing a suspect was deemed to be engaging in discretionary conduct. Important to that decision was the fact that the police department's policy did not specifically outline how an officer should drive and "the act of continuing pursuit was dependent on the officer's judgment as the policy directs that he must continually question whether he should continue the pursuit." Id. at 558(¶ 34). Similarly, there was no statute, regulation, or police department policy which outlined how Officer Beck should have addressed the icy condition. Accordingly, the precise time, manner, and conditions by which these duties were to be observed were not prescribed, and, therefore, were left to the judgment of each officer.
¶ 33. We find that Officer Beck's actions with regard to the icy condition on the highway involved an element of choice or judgment. As such, the decision to promptly notify the MDOT of the icy condition rather than remaining at the scene after the first accident was discretionary and not ministerial. By choosing this course of conduct, Officer Beck exercised his discretion in an attempt to make the dangerous condition safe. See, e.g., Cargile, 847 So.2d at 269(¶ 44). A finding that the decision was a matter of discretion and not ministerial, however, satisfies only the first prong of the two-prong public policy test to determine whether the City of *1253 Greenwood is covered by a grant of immunity.
2. Whether the choice or judgment involves social, economic, or political policy
¶ 34. The second prong of the test protects only those discretionary acts or decisions founded upon public policy considerations. Dotts, 933 So.2d at 327(¶ 15) (citing Berkovitz v. United States, 486 U.S. 531, 536, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988) and Elder v. United States, 312 F.3d 1172, 1176 (10th Cir.2002)). The purpose of this limitation is to prevent judicial second-guessing of policy decisions through tort actions. Id. "[F]unctions which by nature are policy decisions, whether made at the operational or planning level, are protected." Jones, 744 So.2d at 260(¶ 10) (citations omitted). Accordingly, this limitation is applicable to the day-to-day decisions made by police officers and other governmental actors. See id.; Gaubert, 499 U.S. at 325, 111 S.Ct. 1267.[8] The relevant inquiry regarding this prong thus would be whether Officer Beck's choice involved public policy considerations.
¶ 35. In the case sub judice, neither party addressed this prong of the public policy function test in their summary judgment briefs before the trial court nor do they address it on appeal. Consequently, the trial judge did not have the opportunity to apply both prongs of the public policy function test to the facts of this case, and we cannot affirm the trial court's decision on this ground. Were we not affirming summary judgment pursuant to sections 11-46-9(1)(c) and (q), we would be compelled to remand this case for a determination of the city's immunity based on both prongs of the public policy function test. As will be discussed below, however, where any of the immunities enumerated in section 11-46-9(1) apply, the government is completely immune from any claims arising from the act or omission complained of.
C. WHETHER THE ACCIDENT WAS CAUSED SOLELY BY THE EFFECTS OF THE WEATHER
¶ 36. The Willings' final assignment of error regarding summary judgment involves section 11-46-9(1)(q) of the MTCA. Specifically, the Willings insist that a genuine issue exists regarding whether the fatal accident which claimed the life of Willing, Sr. was "caused solely by the effect of weather conditions on the use of" Highway 82. Miss.Code Ann. § 11-46-9(1)(q) (Rev.2002). Under this MTCA provision, a governmental entity cannot be held liable for injury if that injury was caused solely by a weather conditionin our case, the patch of ice on the road. We agree with the city's position and the circuit court's holding on this issue that the accident in this case was caused solely by the patch of ice on the highway.[9]
*1254 ¶ 37. Mississippi courts have had occasion to consider this issue in very few cases. In Hayes v. Greene County, 932 So.2d 831 (Miss.Ct.App.2005), this Court considered the county's claim that fog was the sole cause of the accident at issue. In that case, plaintiff Hayes was injured when her vehicle was struck from behind by another vehicle. Id. at 832(¶ 2). Hayes stated that her view was severely limited that morning because of the fog. In particular, she had difficulty seeing a garbage truck stopped ahead of her on the highway. She did manage to see the truck in sufficient time to avoid a collision with the truck. The motorist behind Hayes, however, was not able to stop before striking Hayes from the rear. We agreed with the trial court that the weather was the sole proximate cause of that accident, and consequently the county was immune under the MTCA. Id. at 833(¶ 8).
¶ 38. In Schepens v. City of Long Beach, 924 So.2d 620 (Miss.Ct.App.2006), we held that the defendant city was immune from a claim alleging failure to maintain a dirt road where the potholes in the dirt road at issue were caused by rain. Id. at 623(¶ 12). We did not hold in Schepens that the city did not have a duty to maintain the roads, only that the city was immune under the circumstances for any alleged failure to perform that duty because the accident at issue was caused by potholes which were in turn caused by the effects of weather on the dirt road. Id. Similarly, we do not hold in the case sub judice that the City of Greenwood did not have a duty to warn of the patch of ice on the highway, we hold that the city is immune from any alleged breach of that duty because the ice was caused solely by the "effect of weather on the use of streets and highways." See Horan v. State, 212 N.J.Super. 132, 514 A.2d 78, 79 (Ct.App. Div.1986) (cited with approval in Pico v. State, 116 N.J. 55, 560 A.2d 1193 (1989)).[10]
¶ 39. Because the Willings do not point to any evidence that Officer Beck or the City of Greenwood contributed to or were otherwise responsible for the formation of the patch of ice, summary judgment was appropriate as to this immunity. See Horan, 514 A.2d at 80.
¶ 40. We will not address the propriety of the trial court's finding that the city was not immune under section 11-46-9(1)(v) as this issue was not raised on appeal. In any event, we have found summary judgment appropriate with respect to immunities found at subsections *1255 (c) and (q) of Mississippi Code Annotated section 11-46-9(1) (Rev.2002). As established by precedent of both this Court and our supreme court, where any of the immunities enumerated in section 11-46-9(1) apply, the government is completely immune from any claims arising from the act or omission complained of. See State v. Hinds County Bd. of Supervisors, 635 So.2d 839, 842 (Miss.1994) (stating that "the State cannot be held liable for damages if the conduct falls within one of the exceptions found in Miss.Code Section 11-46-9"); Pearl River Valley Water Supply Dist. v. Bridges, 878 So.2d 1013, 1020(¶ 32) (Miss.Ct.App.2004) (stating that "[i]n the absence of a holding . . . that both immunities must apply before either does, . . . we hold that the District is completely immune from liability because of the applicability of Section 11-46-9(1)(c)"). Accordingly, we affirm summary judgment in favor of the City of Greenwood.[11]
II. WHETHER THE TRIAL COURT ERRED BY AWARDING CONTINGENT FEES TO ATTORNEY RICHARD BENZ, JR.
¶ 41. The Willings appeal the circuit's court award of a one-third contingency fee to Benz out of the settlement proceeds attributable to Jeanette Willing and her two minor children. The Willings point out that the Chancery Court of Leflore County improperly granted letters of administration to Joseph and improperly approved the contingent fee contract between Benz and Joseph. The Willings further argue that since the Leflore County chancellor revoked the letters of administration and revoked approval of the Benz-Joseph contract, Benz is entitled to contractual fees only with respect to his representation of Joseph and to fees based on quantum meruit for any work that may have benefitted beneficiaries other than Joseph.
¶ 42. We agree with the Willings' conclusion; although for reasons that will be discussed, we do not agree with the reasoning employed by the Willings to reach this conclusion. Nonetheless, since the chancellor's disbursement order cited the Joseph-Benz contingency fee contract as the basis for awarding attorney's fees to Benz, and a substantial portion of the fees were derived from proceeds attributable to the two Willing minors, we are obligated to reverse and remand this case to the Circuit Court of Leflore County for a quantum meruit determination as to what fee Benz is entitled from Jeanette's and the two minor Willings' share of the settlement proceeds.[12] Additionally, any determination regarding fees out of the proceeds attributable to the two minors must be made contingent on approval by the Chancery Court of Grenada County.
*1256 ¶ 43. The Mississippi Supreme Court recently clarified what had been very murky waters. In Long v. McKinney, 897 So.2d 160 (Miss.2004), the court acknowledged the difficulty that practitioners and judges alike have encountered applying Mississippi's wrongful death statute.[13] The case before this Court is no different than the situation found in Long in that the errors involved here were urged by experienced and competent counsel and approved by an experienced and competent trial judge. With the benefit of the supreme court's holding in Long to guide our analysis, we find that the trial court erred by citing the Joseph-Benz contract as the measure of attorney's fees to which Benz was entitled from Jeanette's and the two minors' settlement proceeds and by not subjecting the fee award from the minors' proceeds to the approval of the Chancery Court of Grenada County. We will now discuss these errors.
¶ 44. A wrongful death beneficiary may bring suit with or without the knowledge and agreement of the remaining beneficiaries or estate representative. Long, 897 So.2d at 176(¶ 68). Naturally, in doing so, the beneficiary has authority to retain counsel to prosecute the suit on behalf of all interested parties. Id. However, the representative beneficiary has an affirmative duty to "provide reasonable notice (i) to all other wrongful death beneficiaries; (ii) to the personal representative of the decedent if one has been appointed. . . ." Id. Additionally, "full disclosure is required of any agreement or arrangement for the payment of costs or attorney's fees from the portion of recovery attributable to those receiving such notice." Id. at (¶ 69). The personal representative and/or one or more of the beneficiaries may join the litigation represented by separate counsel. Id. In this event, "the portion of recovery attributable to such claimants shall not be subject to such agreement or arrangement, absent written consent after full disclosure." Id. Under these circumstances the trial judge has discretion, upon petition by the personal representative or any beneficiary, to "equitably adjust and allocate fees among the attorneys based on the quantitative and qualitative contribution of each to the case. . . ."[14]Id.
¶ 45. In the case at bar, Jeanette Willing retained separate counsel to represent her interests individually as beneficiary, as personal representative of Willing, Sr.'s estate, and as guardian of her two minor children. There is no evidence in the record that Jeanette gave informed written consent to the representation and fee arrangement between Joseph and Benz. Accordingly, Benz was entitled to contingency fees based on the Joseph-Benz contract only with respect to Joseph's portion of the proceeds. Regarding the remainder of the proceeds, "an attorney who successfully prosecutes a wrongful death claim without representing all of the heirs must prove that he has earned a fee from the proceeds distributed to all of the heirs." Franklin v. Franklin, 858 So.2d 110, 123(¶ 46) (Miss.2003) (citing Pannell v. Guess, 671 So.2d 1310, 1315 (Miss.1996)).
*1257 ¶ 46. The fact that Benz was instrumental in securing the settlement with Simpson's insurance carrier, the only proceeds at issue here, is not disputed. The Willings concede that Benz was entitled to fees based on quantum meruit with respect to proceeds attributable to the estate, Jeanette Willing, and the two minor children. We agree, with two reservations. First, the amount of the proceeds attributable to the estate was deducted prior to the calculation of contingency fees that were ultimately awarded to Benz. Therefore, Benz did not receive any fees from the estate's share of the proceeds. Since Benz did not assert a claim to fees from the estate's share of the proceeds at trial, we will not require a determination on remand as to his quantum meruit entitlement thereto.[15]
¶ 47. Second, we do not agree with the Willings' contention that the circuit court did not have jurisdiction to apportion any fees to Benz. Chancery court approval is required only with respect to fees paid out of estate proceeds and fees paid out of minors' proceeds. See Long, 897 So.2d at 174-76 (¶¶ 59-67) (discussing the appropriate role of a chancery court in light of this commonly misunderstood and misapplied aspect of wrongful death litigation).[16] While the circuit court overstepped its authority by awarding attorney's fees from the proceeds attributable to the two minor children without subjecting the award to approval by the Chancery Court of Grenada County, the circuit court nonetheless had jurisdiction over the issue. See id. at 176(¶ 69) (stating that "the trial court may equitably adjust and allocate fees among the attorneys") (emphasis added). We find the Willings' argument to the contrary to be without merit.
¶ 48. Accordingly, we agree with the Willings' contention that quantum meruit is the appropriate measure for attorney's fees with respect to work performed by Benz that may have benefitted Jeanette Willing and her two minor children.

CONCLUSION
¶ 49. We find that the circuit court was correct in finding that there were no genuine issues as to whether the immunities found in Mississippi Code Annotated sections 11-46-9(1)(c)and (q) applied to the City of Greenwood. We therefore affirm the court's grant of summary judgment in favor of the city.
¶ 50. With respect to the contingency fees awarded to attorney Richard Benz, Jr., we remand the case to the Circuit Court of Leflore County with instructions that an evidentiary hearing be held to determine the amount of attorney's fees to which the Estate of Richard Benz, Jr. is *1258 entitled based on quantum meruit. We do not disturb the contingency fees awarded by the circuit court to Benz from the settlement proceeds attributable to Joseph nor do we find that the estate proceeds should be considered in the court's determination. The circuit court's determination should also be contingent upon approval by the Chancery Court of Grenada County of attorney's fees from the proceeds attributable to the two minor Willings.
¶ 51. THE JUDGMENT OF THE LEFLORE COUNTY CIRCUIT COURT IS AFFIRMED IN PART AND REVERSED AND REMANDED IN PART. ALL COSTS OF THIS APPEAL ARE ASSESSED IN EQUAL PARTS TO THE APPELLANTS AND APPELLEE ESTATE OF RICHARD BENZ, JR., DECEASED.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, ISHEE AND ROBERTS, JJ., CONCUR. GRIFFIS AND CARLTON, JJ., NOT PARTICIPATING.
NOTES
[1] This stretch of Highway 82 was under construction at the time of the accident, and the posted speed limit was forty-five miles per hour.
[2] Richard Benz, Jr. died on January 23, 2006, after the notice of appeal was filed in this case. A motion to substitute parties pursuant to M.R.A.P. 43 was made after we rendered our original opinion in this case. An order allowing the substitution of the Estate of Richard Benz, Jr., and Wendy Benz, executrix, was entered on February 27, 2007, and our modified opinion reflects this substitution.
[3] Joseph Erich Willing, Jr. is an adult child of Willing, Sr. from a prior marriage.
[4] Section 91-7-63 provides that letters of administration shall be granted in the county in which the decedent resides at the time of death, if decedent had a fixed place of residence at that time. Miss.Code Ann. § 91-7-63(1) (Rev.2004). It was not disputed that Willing, Sr. resided in Grenada county at the time of his death. This section further provides that in granting letters of administration, preference should be first given to the husband or wife of the decedent. Id.
[5] While the Willings' only argument regarding the duty at issue is that the city had a duty to warn, we find the duty owed to be much broader in that the city and Officer Beck had a duty to insure the safety of the public, in this instance, the traveling public. In referencing this argument, we will mention the duty to warn, the duty to make safe, and the duty to insure the safety of the traveling public, but we acknowledge that the two former duties are really alternative means of achieving the latter. See Miss. Dep't of Transp. v. Cargile, 847 So.2d 258, 269(¶ 44) (Miss.2002) (discussing MDOT's duty to warn of and/or provide relief from, i.e., make safe, the dangerous conditions on the road).
[6] The court in Cargile found that the trial court correctly held MDOT's duty to regularly inspect and maintain the highway to be discretionary. Nonetheless, the court held that MDOT had a duty "to exercise a minimum standard of ordinary care to maintain the statutory shield. As in Jones, MDOT has a duty to warn of dangerous conditions if given notice, either actual or constructive, of a dangerous condition." Accordingly, "[i]mmunity for discretionary duties is granted only when ordinary care is used." Cargile, 847 So.2d at 269(¶ 44) (citing Brewer v. Burdette, 768 So.2d 920 (Miss.2000)).

In Jones, the court found that after a road is built and the entity responsible for that road becomes aware of a dangerous condition of the road, the entity's duty becomes one of maintenance, and the entity must use due care in the exercise of its discretion. Jones, 744 So.2d at 264(¶ 24).
Givens involved the failure of the county to place a traffic sign warning of an allegedly dangerous curve. Givens, 754 So.2d at 1227(¶ 10). The court recognized that the "plaintiffs concede that the placement of traffic signs is a discretionary function," but held that an issue of fact existed as to whether the county "had exercised the requisite ordinary care in the performance of its discretionary duties." Id.
The Willings also cite Yazoo City v. Loggins, 145 Miss. 793, 110 So. 833 (1927) for the proposition that a city's duty to warn of a dangerous condition on its sidewalks and streets is not discretionary. We do not find applicable the Loggins court's holding that a municipality must use ordinary care to warn travelers of the dangers associated with city streets and sidewalks as the court's decision was rendered well before enactment of the statutory immunity in effect at the time the accident occurred in the case sub judice. In fact, the Loggins court's opinion does not even mention sovereign immunity or discretionary duties.
[7] The court relied on language found in the statutes mandating that authorities place traffic control devices as deemed necessary. Miss.Code Ann. §§ 63-3-303-305 (Rev.2004).
[8] According to the United States Supreme Court, "A discretionary act is one that involves choice or judgment; there is nothing in that description that refers exclusively to policymaking or planning functions. Day-to-day management of banking affairs, like the management of other businesses, regularly requires judgment as to which of a range of permissible courses is the wisest. Discretionary conduct is not confined to the policy or planning level. `It is the nature of the conduct, rather than the status of the actor, that governs whether the discretionary function exception applies in a given case.'" Gaubert, 499 U.S. at 325, 111 S.Ct. 1267 (quoting Varig Airlines, 467 U.S. at 813, 104 S.Ct. 2755).
[9] The Willings assert that Sharon Simpson, the driver of the vehicle involved in the fatal accident, was also negligent, precluding a finding that the weather was the sole cause of the accident. Conceding this fact, our conclusion is not affected, for it is the governmental actor's conduct that is relevant for purposes of immunity. To allow the negligence of a third party to thwart the immunity of the government under this or any other provision would produce absurd results. Indeed, if this were allowed, it could be argued that even the plaintiff's negligence should preclude immunity. We do not think that this was the legislature's intent in using the term "sole."
[10] Horan involved factually and legally similar issues as our case: an accident caused by ice on a road, an allegation of a failure to warn, and an immunity provision very similar to our section 11-46-9(1)(q). In addressing the plaintiff's arguments that the city's failure to warn contributed to the accident, the court stated: "As the trial judge recognized and as we agree, if these arguments were thought to be sound, the weather immunity statute would, in effect, be written out of the books." Horan, 514 A.2d at 79. According to the court in Horan, only when the government creates or exacerbates a weather hazard will immunity be lost. Id. at 80.

Pico also involved an accident caused by ice on the highway. In addition to citing with approval the reasoning and holding of Horan, the court went further in stating that "under the [New Jersey] Tort Claims Act the State may be liable for the failure to correct a known pre-existing dangerous condition unrelated to the weather, but that it is immune from liability for such a condition caused solely by weather."
[11] However, in so affirming summary judgment in this case, we distinguish the facts present in this opinion from the facts in our previously decided opinion of McDonald v. Mississippi Department of Transportation, 2005-CA-00128-COA (¶¶ 19-28) (Miss Ct. App. Sept. 19, 2006). In McDonald, the plaintiff's multiple claims, including negligent design and negligent repair, arose from injuries she suffered in an automobile accident upon a bridge. Citing to a law review article by Jim Frasier, "A Review of the Substantive Provisions of the Mississippi Governmental Immunity Act: Employees' Individual Liability, Exemptions to Waiver of Immunity, Non-jury Trial and Limitation of Liability," 68 Miss. L.J. 703, 813 (1999), we held that where there are separate claims, each based on different allegedly negligent actions by the state entity, then each claim must be independently tested against the list of exemptions from liability provided by section 11-46-9. McDonald, 2005-CA-00128-COA at (¶ 28). Unlike the facts in McDonald, in the present case there is only a single allegation of negligence.
[12] As will be discussed infra, fees from proceeds attributable to the Willing, Sr. estate are not at issue.
[13] Mississippi's wrongful death statute is found at Mississippi Code Annotated section 11-7-13 (Rev.2002).
[14] "Counsel will be paid their fees and expenses from their respective client's recovery, according to their agreements, provided however, that any party or counsel who believes in good faith that attorney fees have been distributed in a manner which is grossly out of proportion to the work performed, may petition the trial court for a review of the work performed by all counsel and a more equitable distribution of attorney fees." Long, 897 So.2d at 178-79(¶ 82).
[15] A wrongful death claim is not part of the decedent's estate. Franklin, 858 So.2d at 115(¶ 14) (citations omitted). However, "the estate is entitled to recover funeral costs and final medical expenses." Long, 897 So.2d at 169(¶ 33). In the instant case, funeral expenses and medical expenses were subtracted and paid to Willings Sr.'s workers compensation carrier as reimbursement and additional funeral expenses were subtracted and paid to Jeanette Willing prior to the calculation of the contingency fee. Therefore, Benz's contingency fees were based only on proceeds attributable to Jeanette individually, her two minor children, and Joseph.
[16] The court in Long held that chancery approval of representation and of the fee agreement is prudent, but not required, prior to initiating suit on behalf of the estate and other beneficiaries. Chancery court approval is necessary for representation of a minor's interest, for attorney's fees awarded from a minor's proceeds, for fees awarded from proceeds of an estate, and for determination of wrongful death beneficiaries. Long, 897 So.2d at 174-76 (¶¶ 59-67).